In Re: Laymen's Weekend Retreat League of Philadelphia Pursuant to the County Assessment Law from a Decision by the Chester County Board of Assessment and Revision of Taxes.

Laymen's Weekend Retreat League of Philadelphia, Appellant.

Argued April 3, 1975, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Thomas A. Riley, Jr.,* with him *John C. Snyder* and *Lentz, Riley, Cantor, Kilgore & Massey, Ltd.,* for appellant.

*Milton Apfelbaum,* Assistant County Solicitor, with him *John S. Halsted,* County Solicitor, for appellee.

OPINION BY JUDGE BLATT, September 5, 1975:

The Laymen's Weekend Retreat League of Philadelphia appeals to us from a decision of the Court of Common Pleas of Chester County which affirmed the Chester County Board of Assessment and Revision of Taxes (Board). The Board had determined that, out of the total assessed value of $362,488 for all land and buildings owned by the Retreat League, it was entitled to an exemption of $143,772, leaving the total assessed value of the taxable property at $218,716. The Retreat League claims that it is entitled to an additional exemption of $214,164 attributable to the buildings which have not been exempted by the Board. No exemption is sought with respect to 56.9 acres of the land assessed at $4,552.

The Retreat League was founded by laymen in 1922 with the purpose, as expressed in its charter, "to conduct weekend retreats as a purely public charity for the spiritual advancement of persons attending the retreats without regard to their race, creed or condition of life." In pursuit of that objective, the Retreat League maintains 151 acres in Chester County, upon which are located three dormitory buildings, a multi-purpose building, a dining room and an office building along with numerous lawns, walkways, roads and wooded areas which contain various shrines and statues, almost all of which are

religious in nature. Upon this property, the Retreat League conducts retreats on 48 weekends of the year. Occasionally, retreats are conducted during the week as well. As described mostly by John N. Cackley, the Administrator of the Retreat League, the activities in which the retreatants are given the opportunity to meditate tional exercises including prayer at Mass, the Stations of the Cross and the saying of the Rosary. In addition, the retreatments are given the opportunity to meditate and, if they desire, to consult with others. Thereby the proper atmosphere is created in order that the retreatants may reflect upon their spiritual condition along with their goals in life and that they may refresh their faith in themselves, in their fellow men and in God.

No fees are charged to any of the guests for the costs of their stay, although donations are solicited. All other income is generated through contributions. The entire revenue collected by the Retreat League is used to operate its facilities.

The Board apparently granted an exemption here for the actual places of religious worship located on the Retreat League's property but denied the additional exemption which was sought by the Retreat League in the claim of its status as a public charity.

In *Laymen's Week-End Retreat League of Philadelphia v. Butler,* 83 Pa. Superior Ct. 1 (1924), our Superior Court considered the same issues presently before us in a case involving the same institution. Judge KELLER there pointed out the constitutional source for the religious exemption as well as for the charitable exemption. Article 8, Section 2(a) of the Pennsylvania Constitution presently provides separate authority for those two exemptions:

> "The General Assembly may by law exempt from taxation:
> "(i) Actual places of regularly stated religious worship;

\* \* \* \*

"(v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution."

The Legislature has seen fit to grant both exemptions according to the following terms:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

"(1) All churches, meeting-houses, or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same;

\* \* \* \*

"(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose"; Section 204(a) of The General County Assessment Law,[1] 72 P.S. §5020-204(a).

The distinction between "actual places of regularly stated religious worship" and "institutions of purely public charity" has been consistently recognized by our courts. In the case of the latter, all property actually and regularly used for the purpose of the institution is subject to the exemption, whereas the more restricted exemption

---

1. Act of May 22, 1933, P.L. 853, *as amended.*

status afforded to the former has not been extended beyond ingress and egress, and light and air. *Second Church of Christ Scientist of Philadelphia v. Philadelphia,* 398 Pa. 65, 157 A.2d 54 (1959). *See First Baptist Church of Pittsburgh v. Pittsburgh,* 341 Pa. 568, 20 A.2d 209 (1941); *Dougherty v. Philadelphia,* 139 Pa. Superior Ct. 37, 11 A.2d 695 (1940).; and *Parmentier Trustees' Appeal,* 139 Pa. Superior Ct. 27, 11 A.2d 690 (1940).

It has also been clearly held that organizations with a religious purpose may still qualify for the exemption as a "purely public charity." *West Indies Mission Appeal,* 387 Pa. 534, 128 A.2d 773 (1957), and the Retreat League here relies heavily on the cases which apply that rule of law. In the *West Indies Mission* case, the property entitled to the charitable exemption was being used as a training ground for missionaries who were sent to the West Indies to provide medical services, broadcast religious radio programs and perform other missionary work. The property also served as headquarters for the organization and housed the missionaries and their families from time to time. In *Pittsburgh Bible Institute v. Board of Property Assessment, Appeals and Review,* 405 Pa. 297, 175 A.2d 82 (1961), the exempted property included an administration building as well as a chapel and dormitories used by the Institute in its endeavor to impart religious instruction which included preparation for missionaries, Bible teachers, and Christian workers plus a study of the Bible itself and training in various forms of prayer. In *Board of Home Missions and Church Extension of the Methodist Episcopal Church v. Philadelphia,* 266 Pa. 405, 109 A. 664 (1920), the exempted property was an office to which were sent contributions which in turn were dispersed throughout America for the support of missionaries. It has been held that "to bring the hearts of an indefinite number of persons 'under the influence of education or religion,' was a proper object of public charity." *Board of Home Missions,*

*supra,* 266 Pa. at 411, 109 A. at 665. The Retreat League argues essentially that, because its institution has the effect of bringing people under the influence of religion, it ought also to be entitled to the charitable exemption. Every church or other "place of regularly stated religious worship," of course, could be considered to have that same effect. And yet such places of worship have not been considered institutions of charity so as to qualify for the broader charitable exemption. All three cases referred to above, in which a religious purpose was also found to be a charitable one, involved institutions which were not primarily places of worship.[2]

It is clear in this case that the central purpose of the Retreat League is to provide individuals with the proper atmosphere in which to meditate and pray. In the original *Week-End Retreat League* case, Judge KELLER well recognized that this was a place of worship where men might engage in spiritual exercises and hours of devotion for their own spiritual advancement and to train themselves for the Christian life, and his application of the law is equally appropriate today:

> "But wherever the dominant purpose of an institution is religious worship and the spiritual advancement of those attending its religious services or participating in such worship, it must be considered—from the standpoint of exemption from taxation,—as a religious institution proper, although incidentally to its main purpose it may dispense charity; and exemption from taxation is permitted to only such of its property as constitute 'actual places of religious

---

2. Likewise are *White v. Smith,* 189 Pa. 222. 42 A. 125 (1899); *American Sunday School Union v. City of Philadelphia,* 161 Pa. 307, 29 A. 26 (1894); *Pinebrook Foundation, Inc. v. Commissioners of Monroe County,* 18 Monroe L. Rep. 7 (1956); *Eastern District Council of the Assemblies of God v. Zendt,* 42 D & C 235 (1941).

worship.' " *Laymen's Week-End Retreat League, supra,* 83 Pa. Superior Ct. at 4.[3]

The order of the lower court is, therefore, affirmed.

---

3. The Retreat League here seeks a charitable exemption based on the religious and spiritual benefits which it bestows on retreatants. The free food and lodging which those retreatants receive should be viewed as incidental to that charitable purpose. If viewed separately, the giving out of such material benefits would clearly not entitle the Retreat League to a charitable exemption, for the retreatants have not been shown to be unable to provide themselves with food and lodging. *See Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 187 A. 204 (1936).