Mount Zion New Life Center, Appellant *v.* Board of Assessment and Revision of Taxes and Appeals, Appellee.

Argued November 14, 1985, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Scott A. Williams*, for appellant.

*William A. Hebe*, for appellee.

OPINION BY JUDGE CRAIG, January 30, 1986:

Mount Zion New Life Center appeals an order of the Court of Common Pleas of Tioga County which affirmed a decision of the Board of Assessment and Revision of Taxes and Appeals of Tioga County denying Mount Zion's petition for tax exemption as an actual place of regularly stated religious worship or as a purely public charity.

Mount Zion New Life Center is a Pennsylvania nonprofit corporation whose by-laws provide that the purpose of the corporation "shall be to establish and maintain (1) a retreat center for persons desiring to learn Christian living and discipleship, (2) a counseling service and prayer time, (3) a recluse [sic] for persons desiring spiritual encouragement, and (4) a center for Holy Spirit ministries."

One hundred and four acres of land in Union Township, Tioga County, owned by the corporation, serve as the site for the Mount Zion New Life Center. After granting tax exempt status for seven years, the board

placed the land on the tax rolls in 1981. Mount Zion initiated this exemption request with respect to 1984 taxes.

Mount Zion contends that it is exempt from taxation under the General County Assessment Law.[1] However, the Fourth to Eighth Class County Assessment Law[2] applies here[3] because the acreage is located in a seventh class county, and is not in a city.[4]

---

[1] Section 1 of the Act of June 11, 1968, P.L. 157, *as amended*, 72 P.S. §5020-1 to §5020-602.

[2] Sections 1 through 706 of the Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §§5453.101-5453.706.

[3] Although Mount Zion proceeded under the General County Assessment Law, we believe that its arguments fully apply to its tax status under the Fourth to Eighth Class County Assessment Law.

The statutes authorizing this exemption followed the Pennsylvania Constitution as it originally provided, "the General Assembly may, by general laws, exempt from taxation . . . actual places of religious worship . . . ." Pa. Const. of 1874, art. IX, §1.

As amended, the constitution states:
> "The General Assembly may by law exempt from taxation:
> (i) Actual places of regularly stated religious worship . . . ."

Pa. Const., art. VIII, §2(a).

In *Holland Universal Life Church of Love Appeal*, 38 Pa. Commonwealth Ct. 529, 394 A.2d 665 (1978), we denied exemption under the Fourth to Eighth Class County Assessment Law, relying on cases which applied various earlier statutes exempting from taxation regular places of stated worship. *See City of Philadelphia v. Barber*, 160 Pa. 126 (1894) (applying the Act of May 14, 1874, P.L. 158) ; *City of Philadelphia v. Overbrook Park Congregation*, 171 Pa. Superior Ct. 581, 91 A.2d 310 (1952) (applying the Act of May 16, 1923, P.L. 207, *as amended*).

Thus, for purposes of determining whether certain property constitutes an actual place of regularly stated religious worship, the case law is interchangeable although decided under different statutes.

[4] Section 104 of the Fourth to Eighth Class County Assessment Law, 72 P.S. §5453.104, permits cities within those counties to place themselves under the act by passing an ordinance stating that fact.

The two pertinent provisions of the latter law state:

(a)   The following property shall be exempt from all county, borough, town, township, road, poor, county institution and district and school (except in cities) tax, to wit:

(1)   All churches, meeting-houses, or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same;

. . . .

(9).  All real property owned by one or more institutions of purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public charity and necessary for the occupancy and enjoyment of such institutions so using it;

Section 1 of the Fourth to Eighth Class County Assessment Law, 72 P.S. §5453.202(a)(1) and (9).

The taxpayer has the burden of proving entitlement to an exemption from taxation. *Lehigh Valley Co-Op. Farmers v. Bureau of Employment Security, Department of Labor and Industry*, 498 Pa. 521, 447 A.2d 948 (1982).

### 1.   *Actual Places of Regularly Stated Religious Worship*

The first question we address is whether the concept of *regularly stated* worship requires that the taxpayer schedule and conduct worship services according to an unchanging pattern.

In *Mullen v. Commissioners of Erie County*, 85 Pa. 288 (1877), Chief Justice AGNEW stated:

---

All other cities are subject to the General County Assessment Law. *See* section 104 of the General County Assessment Law, 72 P.S. §5020-104.

They must be places of *stated worship*. The word stated means fixed, established, occurring at regular times, as stated hours of business. So, statedly means at certain times, not occasionally.

*Id.* at 291 (emphasis in original).

The majority of retreatants who visit the Mount Zion New Life Center are members of church groups accompanied by their own clergy. Each group prepares its own schedule of daily events to be conducted during the retreat.[5] The dates on which a particular group will hold its retreat are scheduled by the group and Mr. Bauman, the Center's administrator.[6] During the group's stay, its own spiritual leader usually leads the worship and teaching sessions, at times accompanied by Mr. Bauman, who attends most worship and teaching sessions.

Because the scheduling of worship over the course of a year involves many different groups, the Center adheres to no established pattern of time and frequency of worship.

The trial court, in denying tax exemption, apparently concluded that the act requires that the taxpayer maintain a uniform, predetermined worship schedule. The court wrote:

---

[5] The Center introduced into the record a retreat schedule used by the Golden Heights Christian Center during its retreat at Mount Zion. The schedule, running from Friday evening through Sunday afternoon, listed times for worship sessions; times, titles and leaders of teaching sessions; and times for meals and recreation. Mr. Bauman testified that the schedule typified most of the retreats conducted at Mount Zion.

[6] The Center introduced a log of events which listed the groups which conducted retreats at the Center and the corresponding dates from October, 1983 through August, 1984. Most retreats took place on weekends. However, the Center regularly hosted groups of retreatants during the week, usually for three days. Especially during the summer months, the Center hosted a number of week-long retreats.

We have indicated that we received no testimony that the petitioners conducted regularly stated religious worship. The testimony indicates that most of the religious services are conducted by retreatants pursuant to their own programs. If one were to determine when and where the religious service was to be conducted, one must inquire of the schedule of the retreatants.

The Statutory Construction Act[7] requires that the courts strictly construe tax exemption provisions. However, the concept of regularly stated religious worship is not limited only to a house of worship which has a finite congregation and a sign or other mode of communication stating the times of weekly worship.

In *First Christian Church Appeal*, 81 York L.R. 77 (1967), the court of common pleas questioned the rigidity of the *Mullen* definition of regularly stated religious worship.

> [W]e are caused to wonder if we should so narrow the definition of worship—even stated worship—to the point where it can mean little more than the Saturday or Sunday gathering, augmented perhaps, by a regularly scheduled mid-week meeting . . . . Surely the story of religion embodies greater substance than the mere weekly scheduling of public devotion.

*Id.* at 79.

In *Laymen's Weekend Retreat League of Philadelphia v. Butler*, 83 Pa. Superior Ct. 1 (1924), a

---

[7] 1 Pa. C.S. §1928(b) provides:

All provisions of a statute of the classes hereinafter enumerated shall be strictly construed:

. . .

(5) Provisions exempting persons and property from taxation.

religious organization sought tax exemption for its retreat site. Concluding that parts of the acreage constituted places of regularly stated religious worship, the court wrote:

> To come within the exempting clause, it must be an actual place of religious worship which contemplates a place consecrated to religious worship, where people *statedly* join together, in some form of worship and not merely individual communion with one's Maker apart from a church, meetinghouse, or some regular places of stated worship—otherwise anybody could claim exemption to his individual property by using it for religious meditation at stated intervals.

*Id.* at 5, 6 (citations omitted) (emphasis added).

Thus, in *Laymen's,* the court deemphasized the mere existence of an established schedule as the controlling criteria for regularly stated worship. Instead, the court focused on the intent of individuals to join together in worship, with the worshipers' establishment of a schedule being a manifestation of that intent.

Yet, there remains Chief Justice AGNEW's observation that "statedly means at certain times, not occasionally." *Mullen,* 85 Pa. at 291.

Accordingly, a review of the record in this case, specifically noting the planning and scheduling of retreat programs and the logs of events, convinces us that the worship conducted at the Center constitutes regularly stated religious worship. Even though, consistent with the nature of this Center, the identity of the individual worshipers and their religious affiliation changes from week to week, the regularity and constancy of the conduct of worship, virtually on a weekly basis, brings the primary application and use of at least part of the premises clearly within the

concept of being a place of regularly stated religious worship. The record shows that those parts of the premises used for worship are not diverted to inconsistent activities. For example, this Center displays a specialized application to worship which distinguishes it, for example, from a recreational camp facility which might be used only sporadically as a facility for the conducting of religious worship or retreats.

We next consider whether the concept of an *actual place* of regularly stated religious worship requires that the place, in its entirety, be used exclusively for religious worship.

The trial court made the following findings of fact with respect to the buildings and grounds which constitute the Center.

24. The main building is a lodging house containing lodging, dining facilities and is also a facility used for teaching sessions, seminars, prayers, etc.[8]

. . . .

25. The meeting hall, another building located upon the premises, is used primarily for worship and teaching sessions for larger groups.

. . . .

29. There is a building located upon the premises known as faith house, used primarily for worship and teaching sessions reserved for smaller groups. In faith house, there is a lodging space where people can stay.

30. The manor house is also for smaller groups—two to eight people—used for worship,

---

[8] Trial testimony revealed that main building contains two meeting rooms and twenty-two lodging rooms able to sleep sixty-five retreatants. The dining facilities include a kitchen and dining hall.

teaching and is also the home where Mr. and Mrs. Bauman and their family live.[9]

20. In addition to the four main buildings, there are situate upon the premises a barn and a shed . . . .

18. There are three additional sites identified as an outdoor chapel, a prayer garden and circle of faith . . . .

The trial court denied tax exemption to all of the Center's land and buildings, concluding that no building is used exclusively for religious purposes.

Initially, we observe that the courts, through equitable separation, have permitted partial exemption of a building where only part of the structure constituted an actual place of regularly stated religious worship.[10]

---

[9] David Bauman, the administrator of the Center, testified that the manor house contains the Center's administrative office in addition to a kitchen, dining room, living room and four bedrooms.

As administrator, he handles reservations, oversees the arrivals and stays of the retreatants, pays the bills and maintains the grounds, in addition to attending most meetings held by the retreatants, and at times, helping to conduct those sessions and leading in worship.

He stated that his wife cleans the facilities and does the cooking for the visiting groups. The corporation has no other full-time employees. Occasionally young girls of the community assist in preparing large meals.

[10] In *Methodist Episcopal Church v. Philadelphia*, 266 Pa. 405, 411 (1920), the Supreme Court, quoting *Philadelphia v. Barber*, 160 Pa. 123, 128 (1894), stated, "There is in fact no express warrant in the act for dividing the building for purposes of taxation and exempting any part of it, . . . but such division was sustained . . . in *Association v. Donohugh*, 7 W.N. 208 [(1879)], upon grounds of equity and the broad intent of the statute, and has been received with general acquiesence."

In *Weekend Retreat League of Philadelphia v. Butler*, 83 Pa. Superior Ct. 1 (1924), the retreatants used a mansion house on the property as a chapel, library and sleeping quarters. The court exempted "that part of the mansion house devoted to the chapel." *Id.* at 5.

The trial court relied upon this court's opinion in *Holland Universal Life Church of Love Appeal*, 38 Pa. Commonwealth Ct. 529, 534, 394 A.2d 665, 667 (1978) (*quoting Christian Association v. City of Philadelphia*, 75 Pa. Superior Ct. 516, 519 (1921)), where we stated in dictum, "actual use means exclusive use, and mere concurrent or alternate occupation does not come within the requirement for exemption . . . ." *See also Philadelphia v. Barber*, 160 Pa. 123, 28 A. 644 (1894); *Pennsylvania Conference of the Pentecostal Holiness Church v. Mercer County Board of Assessment Review*, 25 D. & C. 3d 536 (1982).

Notwithstanding that dictum, some courts have looked to the place's *primary use* in determining whether it is an actual place of worship in cases factually similar to the one we now address.

In *Solebury Township Board of Supervisors v. Bucks County Board of Assessment and Revision of Taxes*, 17 Bucks Co. L. Rep. 545 (1968), the board of assessment exempted from taxation three buildings on a 71-acre parcel owned by the Reorganized Church of Jesus Christ of the Latter Day Saints, including an auditorium, a mess hall, and a chapel.

The court of common pleas held that the auditorium was entitled to exemption, stating, "the primary use of this building is for religious activities involving large gatherings . . . . [W]e find that although certain recreational facilities exist within the building, the recreational use is purely incidental to the religious use and is of insignificant consequence."

. . . The court also held that the mess hall was not entitled to tax exemption even though religious services were held there during the winter months. The court stated:

[The mess hall] has as its prime function the preparation and dispensing of food for those in attendance at the camp . . . . Although this

building has been used as an actual place of worship in the winter months, this is neither the explicit nor primary use made of the structure. This building serves as an alternate to the chapel building in the winter months merely as a convenience to the membership because of its better heating facilities. . . . The building is not set apart for a religious use only and is not primarily used as a 'regular place of stated worship,' as required by the language of the exemption.

*Id.* at 549-50.

In *Pennsylvania Conference of the Pentecostal Holiness Church v. Mercer County Board of Assessment Review*, 25 D. & C. 3d 536 (1982), the court refused to grant tax exemption for an all-purpose building which was used as a dining hall, a kitchen, and a place where classes, seminars, lectures, committee and auxiliary meetings were held in addition to occasional worship services and a once per year retreat which included worship services and seminar. The court concluded "the testimony establishes (and petitioner concedes) that the primary purpose of the all-purpose building is for teaching and education. The worship that sometimes occurs there is incidental to its other uses." *Id.* at 539.

The primary purpose test more accurately reflects the legislative intent of the statute than does the requirement of exclusive use. Boards of assessment routinely grant tax exemption to entire church and synagogue buildings because they are primarily used for religious worship, even though they commonly contain kitchens, classrooms and facilities in which other affairs of the religious group are conducted, with a relationship to worship. *See Chevra Achewa Chesed Anshe Cheval v. Philadelphia,* 116 Pa. Superior Ct. 101, 176 A. 779 (1935).

Accordingly, we conclude that tax exemption is authorized by statute in those places in which the primary purpose is worship and other activities are merely incidental.

Addressing each building, we conclude that:

1. The meeting hall is exempt from taxation because retreatants use it primarily as a facility for prayer and teaching.

2. That portion of the faith house which retreatants use for worship and teaching is exempt. The lodging space within the faith house is taxable.

3. Although small groups of retreatants use the living room of the manor house for worship and teaching, the house also serves as the home of the Bauman family. Because the Center has not proven that religious worship is the primary use of the living room in the manor house, we deny tax exemption as to it. *See Holland Universal Life Church of Love Appeal,* 38 Pa. Commonwealth Ct. 529, 394 A.2d 665 (1978).

4. Those two rooms within the main building which retreatants use for prayers and teaching sessions are exempt from taxation. All other areas within the lodge are taxable.

5. The barn and the shed on the premises are taxable because they are not actual places of regularly stated religious worship.

6. The three outdoor sites on the property, the outdoor chapel, the prayer garden of love and the circle of faith are places whose primary purpose is religious worship. However, the record clearly indicates that the retreatants do not regularly schedule worship at these places.[11]

---

[11] Mr. Bauman testified:

We have three special areas that are set aside and built especially for people to go and worship, spend time in

Accordingly, these three outdoor prayer areas are not entitled to tax exemption.

In determining what quantity of land should come within the concept of "necessary to the occupancy and enjoyment" of the exempted places of worship, the courts have sought to exempt a "reasonable" amount.

The word 'necessary' does not import an absolute necessity, but its meaning cannot be broadened so as to comprehend that which is merely desirable. As used in this statute, the meaning is limited to a reasonable necessity and contemplates among other matters the inclusion of sufficient ground for entrance and exit and for light and air . . . .

*First Baptist Church of Pittsburgh v. Pittsburgh,* 341 Pa. 568, 576, 20 A.2d 209, 213 (1941).

The courts have commonly concluded that one acre for each place of worship is reasonably necessary to provide for ingress and egress. See *Pennsylvania Conference of the Pentecostal Holiness Church v. Mercer County Board of Assessment Review,* 25 D. & C. 3d 536 (1982); *Solebury Township Board of Supervisors v. Bucks County Board of Assessment and Revision of Taxes,* 17 Bucks Ct. L.Rep. 545 (1968). We believe that one acre is reasonable here.

### 2. *Purely Public Charity*

The Center also contends that the Mount Zion New Life Center is exempt from taxation as a purely public charity.

---

prayer. Sometimes [the retreatants] have teaching sessions there also, because they just go out and use one of those places.

Q. Are there regularly scheduled worship services at those places, weather permitting?

A. Not regularly scheduled in the sense that it is inside, but they are . . . .

In *Laymen's Weekend Retreat League of Philadelphia Appeal,* 21 Pa. Commonwealth Ct. 175, 343 A.2d 714 (1975), this court considered whether a religious retreat place, similar to the one presently before us, is entitled to a charitable exemption because it has the effect of bringing people under the influence of religion. There, we noted that in the original case, *Week-End Retreat League,* 83 Pa. Superior Ct. at 1, "Judge KELLER well recognized that this was a place of worship where men might engage in spiritual exercises and hours of devotion for their own spiritual advancement and to train themselves for the Christian life, and his application of the law is equally appropriate today:

> But wherever the dominant purpose of an institution is religious worship and the spiritual advancement of those attending its religious services or participating in such worship, it must be considered—from the standpoint of exemption of taxation—as a religious institution proper, although incidentally to its main purpose it may dispense charity;[12] and exemption from taxation is permitted to only such of its property as constitute 'actual places of religious worship.' Laymen's Week-End Retreat League, 83 Pa. Superior Ct. at 4.

*Laymen's Weekend Retreat League of Philadelphia Appeal,* 21 Pa. Commonwealth Ct. 175, 180-81, 343 A.2d 714, 717 (1975).

---

[12] The Retreat League sought a charitable exemption based on the religious and spiritual benefits which it bestows on retreatants. *Laymen's Weekend Retreat League,* 21 Pa. Commonwealth Ct. at 181 n.3, 343 A.2d at 717 n.3. Here, Mount Zion similarly contends that it provides charity by providing through God's word, moral health for children and adults. Specifically, certain retreats have addressed the dangers of alcohol and drugs, how to become better citizens, husbands and wives, and employers and employees.

Accordingly, we conclude that the Mount Zion New Life Center is not entitled to tax exemption as a purely public charity.

The decision of the trial court is reversed in part and remanded in accordance with the following order.

ORDER

Now, January 30, 1986, the decree of the Court of Common Pleas of Tioga County, No. 510 Civil Division, 1984, entered April 1, 1985, is modified to the following effect:

1. The meeting hall is exempt from taxation.

2. That portion of the faith house which retreatants use for worship and teaching is exempt.

3. The manor house is fully taxable.

4. Those two rooms within the main building which retreatants use for prayers and teaching sessions are exempt from taxation.

5. The barn and shed on the premises are fully taxable.

6. The three outdoor sites on the property—the outdoor chapel, the prayer garden of love and the circle of faith—are fully taxable.

7. One acre of land, reasonably necessary to provide for ingress and egress, is exempt for each of the three places of regularly stated religious worship.

This case is remanded to the trial court to specify allocations of land and buildings with respect to exempt status, to the extent that such specification is necessary for assessment purposes.

Jurisdiction relinquished.