**Grace Evangelical Lutheran Church v. Hannon**

*Robert L. Saunders,* for petitioner.
*Stanley E. Pecora,* for respondents.

CLELAND, *P.J.,* May 21, 1992—

### MEMORANDUM AND ORDER

Grace Lutheran Church has filed an appeal from the decision of the McKean County Board of Assessment

Appeals which denied an exemption under section 202 of the Fourth to Eighth Class County Assessment Law, 72 P.S. §5453-202(a)(1), for a 100-foot by 30-foot cinder block building and a 25-foot by 211-foot two-story wood building.

In accordance with the agreement of counsel, we heard the issue de novo. The testimony presented by the Rev. Dr. J. Arthur Cox, pastor of the church, was undisputed and the Board of Assessment presented no additional evidence.

## FINDINGS OF FACT

Grace Lutheran Church is located in downtown Bradford. Before moving to its present building it was located nearby on a landlocked site. The size of the congregation was dwindling and the members had twice voted to dissolve. When Dr. Cox arrived in 1975 he undertook an aggressive evangelism mission. In a short time, the old church building was sold, a new building (an empty A&P grocery store) was purchased and renovated, and Sunday worship attendance has increased from less than 30 to more than 160. The growth of the church under his leadership has attracted national attention.

During this process of growth, Dr. Cox explained that the church has learned from experience not to get landlocked. The church has, accordingly, acquired a number of adjoining parcels to incorporate into a parking lot and has options on other properties.

The church has developed its program and its facilities according to a comprehensive, ongoing plan based on its experienced growth and realistic projection of future needs. The properties that have been acquired, or that

are under option, are contiguous to the church building. The properties at issue here lie directly across a street.

The church will renovate the cinder block building to accommodate its Vacation Bible School this summer and move adult education classes into the building in the fall. The wooden building will be torn down when money permits and the area will be used for parking approximately 25 cars. Both buildings are currently used for storage of church equipment and supplies, and the cinder block building is used for an occasional meeting.

If the church had the money at present the cinder block building would be renovated immediately and the wooden building torn down. The church does not have enough money to complete both projects, however, and Dr. Cox testified that it was "not good stewardship to borrow more money now." We understand the board to agree that if the block building was in fact renovated and used in church education programs and if the wooden building was torn down then the properties would both be exempt.

## DISCUSSION

The statute provides that an exemption may be granted to "All churches, meeting-houses, or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same." 72 P.S. §5453-202(a)(1). The taxpayer has the burden of proving entitlement to an exemption from taxation. *Leigh Valley Co-Op. Farmers v. Bureau of Employment Security, Department of Labor and Industry*, 498 Pa. 521, 447 A.2d 948 (1982).

In order to be entitled to an exemption, therefore, the church must prove that the buildings are places of regularly stated worship.

We deal first with the issue of whether it is of any legal consequence that the two buildings in question are detached from the building that houses the sanctuary. Under the circumstances presented here, we think not.

As the Commonwealth Court noted in *Mount Zion New Life Center v. Board of Assessment and Revision of Taxes and Appeals*, 94 Pa. Commw. 439, 503 A.2d 1065 (1986), "Boards of assessment routinely grant tax exemption to entire church and synagogue buildings because they are primarily used for religious worship, even though they commonly contain kitchens, classrooms and facilities in which other affairs of the religious group are conducted, with a relationship to worship." *Mount Zion* at 449, 503 A.2d at 1071. (citation omitted)

We see little distinction in granting an exemption to that part of the church building used for classrooms and storage, and granting an exemption to a separate building used for that same purpose, so long as that building is part of a complex of immediately contiguous properties that is used as an entirely integrated facility.

In this case if the two buildings were physically attached to the main church building and put to the same use there would apparently be no question that they would be exempt. The fact that they are physically separate seems to us to be a legal irrelevancy. If the storage room in the church building is exempt, then the storage shed in the parking lot should be also.

We recognize that when the proximity of a structure or area and the activities undertaken there suggest that

it is being used for purposes which are unconnected to religious activity, we need to examine whether the primary purpose of this separate structure or area is for religious activity. However, the statute does not require that an entire interrelated area be dissected into minute portions with the purpose of each portion being examined to determine if it is exempt. In the unquestionably unique situation before us, where the structures are in such close proximity and used in such an interrelated manner, the question is whether the primary purpose of the entire complex is for religious purposes, not whether each portion of the entire area is used exclusively for religious purposes. To approach the matter any other way would produce ludicrous results.

As we have previously concluded, the acquisition, renovation, and use of these buildings is an integral part of a realistic, long range plan. These buildings were not purchased at some distance from the present facility in anticipation of some future use at some undetermined date. They are immediately adjacent to the main church building; the buildings are currently used exclusively as part of the church's program; the church has clearly defined plans for how the properties are to be used in the future and such use in imminent; the present and future use has a clear and definite relationship to worship that is regularly conducted at the site; the buildings will be used exclusively for worship related purposes; and the size of the total land area of the complex is reasonably related to the realistic worship needs of the church and its congregation.

Accordingly, the decision of the Board of Assessment Appeals dated November 8, 1992, will be reversed.