**CONNELLSVILLE STREET CHURCH OF CHRIST**

v.

**FAYETTE COUNTY BOARD OF ASSESSMENT APPEALS,**

**Appeal of Fayette County Board of Assessment Appeals and County of Fayette.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 7, 2003.

Decided Dec. 19, 2003.

---

John S. Cupp, Jr., Uniontown, for appellant.

Ewing D. Newcomer, Uniontown, for appellees.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

## OPINION BY JUDGE LEAVITT.

The County of Fayette (County) appeals from an order of the Court of Common Pleas of Fayette County (trial court) granting the Connellsville Street Church of Christ (Church),[1] an exemption from real estate taxes on a multi-use building (Building) located on the Church's property. The trial court reversed the decision of the Fayette County Board of Assessment (Board) that the Building was not entitled to an exemption because it was not used for regularly scheduled worship services.

The Church owns 3.8 acres of property located at 519 Connellsville Street, North Union Township, Fayette County, Pennsylvania, which consists of two parcels. The first parcel includes the church building and one-half acre attached thereto needed for ingress and egress. There is no dispute that this portion of the property is exempt from real estate taxation as a place of regularly scheduled worship. The second parcel consists of the Building and the remaining 3.3 acres. The Building is a two-story frame structure, originally constructed as a home, to which have been added a Fellowship Hall and an unfinished addition. The home was used as a parsonage until August 23, 2001, during which time it was taxable.

On July 1, 2002, as part of a countywide reassessment, the County issued two new assessments to the Church. The parcel with the church building and the adjoining .5 acre had its value raised from $44,000 to $195,520. As noted, this parcel is exempt. The second parcel, consisting of the Building and 3.3 acres, had its value increased from $7,660 to $98,700. The Church appealed the assessment on the second parcel, asserting that since August 2001 the Building has also been used for worship and, further, the valuation was excessive. After a hearing, the Board reduced the valuation on the second parcel to $88,700; however, it denied the exemption.

The Church appealed the Board's decision,[2] and a hearing was held by the trial court. At that hearing, Gerald Provance, Church Treasurer (Treasurer), testified. He described the Building as having three contiguous sections and functions.[3] The original, and principal part of the building, is the residence that served as the parsonage for many years until August 2001. The Treasurer described the parsonage as "a very old house" that needs extensive renovation to make it habitable as a regular residence. R.R. 54a. The Church has

---

1. On November 20, 1992, the "Church of Christ at Hopwood" acquired the property in question and changed its name to "Connellsville Street Church of Christ." Reproduced Record 9a (R.R. ——).

2. The Church appealed both the denial of the exemption and the valuation of $88,700. The latter issue was not addressed by the trial court presumably because it granted the exemption.

3. This testimony relating to the third section or addition is unclear, other than it is unfinished and unused. The pictures of the building admitted as exhibits indicate three distinct buildings annexed to each other. Exhibits R–1, R–2 and R–3. The parties could have clarified this matter for the Court at oral argument but they did not appear. On the day of the scheduled argument, the parties faxed a joint motion to the Court to have the matter submitted on briefs, approximately thirty-five minutes before the start of argument court. The parties' motion, while untimely, was granted. Litigants should never presume that simply because a motion is jointly submitted that it will be granted. To the contrary, they should presume that the Court's desire for oral argument is paramount.

no expectation that the building will ever again be used as a parsonage.

The Church does not employ a full-time preacher. A visiting preacher uses the main living room of the former parsonage on Sundays between the services, as "a convenient place for [the preacher and his family] to stay, hang out sort of." R.R. 59a. The parsonage has also been used for "lock-ins" where children arrive after school for classes, a Christian movie, a sleep-over and more classes the following morning. "There is no particular schedule but they have at least two a year of those things." R.R. 53a.

The Treasurer identified the second part of the building as the Fellowship Hall, which consists of a social hall, a kitchen, a basement and an unfinished second floor. It is used for a weekly Wednesday night Bible study and other Church meetings and dinners. It has also been used for wedding receptions and by the Boy Scouts. The unfinished second floor was described as "not finished to the point of being usable," R.R. 53a, and "nothing more than a shell," R.R. 15a, and is used for storage.

The final part of the building, the unfinished addition, was described as a large vacant structure. The Treasurer explained that "we went on up with the construction because it only costs a little bit more to do that thinking that some day in the future we may put in a library and a Christian school but those are only prospective ideas." R.R. 51–52a.

At the conclusion of the hearing, the trial court reversed the decision of the Board. The trial court held that the entire Building and one-half acre of the adjoining land were exempt from real estate taxation because "the 'primary purpose' and use of the structure ... is for religious worship and other activities in that building are 'merely incidental' thereto." Trial Court Order.

 On appeal to this Court,[4] the County raises three issues. It contends that the trial court's finding that the "primary purpose" of the Building was for worship is not supported by substantial evidence. Further, it contends that the trial court abused its discretion and erred as a matter of law in granting the exemption. Finally, it contends that simply because much of the Building is not used at all does not provide a basis for a real estate exemption.[5]

 The basis for a church's exemption from real estate taxation begins with the Pennsylvania Constitution. It provides as follows:

a) The General Assembly may by law exempt from taxation:

(i) *Actual places of regularly stated religious worship;*

Article VIII, § 2 (emphasis added). Pursuant to this authority, Section 202 of the Fourth to Eighth Class County Assessment Law, Act of May 21, 1942, P.L. 571, *as amended,* sets forth the following standard for exemptions from taxation. It states:

(a) *The following property shall be exempt from all* county, borough, town, township, road, poor, county institu-

---

4. This Court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law or made findings unsupported by substantial evidence. *Evangel Baptist Church v. Mifflin County Board of Assessment,* 815 A.2d 1174 (Pa.Cmwlth.2003).

5. The Church claims the issue of non-use was not raised at the trial level and therefore it was waived. However, the Church's witness testified to the areas of the facility which are unfinished and vacant, thereby bringing the issue before the trial court for its consideration.

tion district and school (except in cities) *tax*, to wit:

(1) All churches, meeting-houses or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same.[6]

72 P.S. § 5453.202 (emphasis added). The taxpayer claiming entitlement to the exemption bears the burden of proof. *Evangel Baptist Church v. Mifflin County Board of Assessment*, 815 A.2d 1174 (Pa. Cmwlth.2003).

The leading case in this area of law continues to be *Mount Zion New Life Center v. Board of Assessment and Revision of Taxes and Appeals*, 94 Pa.Cmwlth. 439, 503 A.2d 1065 (1986). At issue in *Mount Zion*, was whether a Christian retreat center was entitled to an exemption as an actual place of regularly stated religious worship. The center consisted of 104 acres of land and several buildings, including the main building, a meeting hall, a faith house, and a manor house. Both parties rely upon *Mount Zion*, as did the trial court. A review of the case and its analysis is, therefore, appropriate.

In *Mount Zion*, the overriding issue was whether regularly stated religious worship was taking place in light of the fact that the identity of the individual worshippers and their religious affiliation changed from week to week. The Court held that worship was taking place. It explained that the regularity and constancy of the conduct of worship, virtually on a weekly basis, brings the primary application and use

of at least part of the premises clearly within the concept of being a place of regularly stated religious worship. *Id.* at 1069. In reaching this conclusion, the Court relied upon *Mullen v. Commissioners of Erie County*, 85 Pa. 288, 291 (1877), wherein the Supreme Court stated,

They must be places of *stated worship*. The word stated means fixed, established, occurring at regular times, as stated hours of business. So, statedly means at certain times, not occasionally.

(Emphasis in original).

The Court next considered whether an actual place of regularly stated religious worship is required to be used exclusively for religious worship. The Court concluded that a tax exemption would be authorized in those places in which the primary purpose is worship and other activities are merely incidental. Having established this principle, the Court then examined the use of each building at the Mount Zion Center, using the principle of equitable separation to permit partial exemptions where only part of a building was primarily used for worship.

Accordingly, the Court held that the meeting hall was entirely exempt because it was primarily used for prayer and teaching. The portion of the faith house which retreatants used for worship and teaching was found exempt, but the lodging space within the faith house was taxable. The two rooms within the main building used for prayer and teaching were exempt from taxation, but all other parts of the main building were taxable. As to the manor house, the Court concluded that, although

---

6. The "actual" nature of worship on the place thought to be exempt is a constitutional requirement, and the "necessary" status of the ground annexed is legislative. Consequently, the exemption of church property is constitutionally restricted, as education and charitable property is not, to the actual place of worship. This distinction between church and charitable exemption has been deliberately and clearly drawn. *Second Church of Christ Scientist of Philadelphia v. City of Philadelphia*, 398 Pa. 65, 67, 157 A.2d 54, 55 (1960).

small groups used the living room of the house for worship and teaching, the house also served as the home of the administrator and his family. Because religious worship was not the primary use of the living room, the manor house was not entitled even to a partial exemption.

Applying the principles of *Mt. Zion* to this case, we find that the trial courts finding that the entire Building is principally used as a place of worship is not supported by substantial evidence. Further, the trial court erred in its understanding and application of the law.

The Treasurer testified that the former parsonage was used on Sundays for the visiting preacher as a study. Its principal use was to provide shelter to the visiting preacher and his family between the morning and evening services. In addition, it was used twice a year for the youth group lock-ins. These uses do not constitute regular worship, and no other evidence of a different use was offered by the Church. The parsonage can be equitably separated from the rest of the building. Since this space is not used primarily as a place of worship, it is taxable. *Mt. Zion; see also Second Church of Christ Scientist of Philadelphia v. City of Philadelphia*, 398 Pa. 65, 68, 157 A.2d 54, 56 (1960) (comparing the denial of the religious worship exemption for a parking lot with the denial of the exemption for a parsonage, which are subject to real estate taxes).

On the other hand, the Treasurer testified that the Fellowship Hall was used weekly for the Wednesday Night Bible Study. The regularity and constancy of this worship brings the primary use of this part of the Building within the *Mt. Zion* standards for a place of regularly stated worship. The Fellowship Hall,[7] which is primarily used for religious worship is, therefore, exempt.

The same, however, cannot be said for the unfinished addition. The Treasurer did not testify it was used for any religious worship. Indeed, he testified that they were not finished to the point of being usable, R.R. 53a, which is in accord with the Church's claim that they were nothing more than a shell. Church Exhibit No. 7.[8] As noted by our Supreme Court, [i]f religious or public worship have not been held in the place, that place itself has not a character. At some day, distant or near, it may be intended to be used for stated public worship, but the fact that it is not now used strips it of its only title to exemption. *Mullen v. Commissioners of Erie County*, 85 Pa. 288, 292 (1877).[9] Accordingly, the unfinished addition part of the Building is taxable.

For these reasons, the decision of the trial court to exempt from taxation the Fellowship Hall, which is principally used for religious worship, and .5 acres needed for ingress and egress is affirmed. The trial court's tax exemption for the parsonage and unfinished addition is reversed. The trial court did not decide the Church's

---

7. The unfinished second floor of the Fellowship Hall is not used at all. However, the primary use of the Fellowship Hall is worship and, therefore, that portion of the Building is entitled to an exemption. Further, the occasional social uses for the Fellowship Hall do not change the fact that its primary purpose is regular worship in the form of Bible study.

8. These exhibits show that these areas are nothing more than framed-out rooms, with exposed studs for walls and ceilings. Respondents Exhibit 10.

9. *Cf. Evangel Baptist Church v. Mifflin County Board of Assessment*, 815 A.2d 1174 (Pa. Cmwlth.2003)(where we held that an unfinished building approved for occupancy and actually being used for services was exempt from real estate taxes).

second issue, *i.e.,* the challenge to the $88,700 valuation of the Building, and, accordingly, we remand for a decision on that issue as well as the proper allocation of the allowable exemption as compared to the total assessment value of the Building.

### ORDER

AND NOW, this 19th day of December, 2003, the order of the Court of Common Pleas of Fayette County dated January 22, 2003, in the above-captioned matter is hereby affirmed in part as it relates to that section of the building identified as the Fellowship Hall and one half acre tract of land. It is hereby vacated as it relates to the parsonage and unfinished addition of the Building, and remanded to the trial court for further proceedings in a manner consistent with the attached opinion.

Jurisdiction relinquished.