**FOUR QUARTERS INTERFAITH SANCTUARY OF EARTH RELIGION, Appellant**

v.

**The BEDFORD COUNTY BOARD OF ASSESSMENT AND REVISION OF TAXES.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 16, 2014.

Decided Sept. 16, 2014.

---

Robert W. Lape, Jr., Roaring Spring, for appellant.

Barry R. Scatton, Bedford, for appellee.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and ROBERT SIMPSON, Judge, and MARY HANNAH LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Four Quarters Interfaith Sanctuary of Earth Religion (Taxpayer) appeals an order of the Court of Common Pleas of Bedford County (trial court) granting Taxpayer a partial tax exemption for two parcels of land it owns in Bedford County. The trial court held that because only portions of the property are used as actual places of worship, Taxpayer was entitled to a partial tax exemption. We affirm in part, reverse in part, and remand the matter to the trial court for further findings.

## Background

Taxpayer is a religious organization of 350 members that owns land in Bedford County where the members perform their outdoor religious rituals. In 2012, Taxpayer requested a tax exemption for two specific parcels, known as the Leisinger Tract and the Stone Circle Tract (collectively, the Property), that total 90 acres. The Bedford County Board of Assessment and Revision of Taxes denied this request, and Taxpayer appealed. The trial court conducted a hearing and heard testimony from several of Taxpayer's members. The Board did not present any witnesses.

Orren Whiddon testified that he is the only member who lives near the Property. Because most members travel from various parts of the northeast, religious services are frequently held on Saturday so that the members can return home on Sunday. Because some of Taxpayer's religious practices can last multiple days or weeks, Taxpayer has established campsites throughout the Property for members. Although the campsites are open to the public, generally only members use them because Taxpayer does not advertise the campsites to the public, has strict rules prohibiting alcohol consumption, and does not permit cars at the campsites.

With the installation of campsites, membership increased. To accommodate growth, Taxpayer built a dormitory, a kitchen, an open air pavilion, storage sheds, a shower and toilet facilities. Only the dormitory and the kitchen are fully enclosed. Taxpayer has also erected various altars throughout the Property, allowing a greater number of ceremonies to be performed.

Whiddon testified that Taxpayer's religious practices require strict privacy. Whiddon explained that if members believe "they're being observed in a casual disrespected manner[,] they're going to pack up their ceremony and go elsewhere and you will never see them again." Reproduced Record at 57a (R.R. ——). Whid-

don explained that, of the 90 acres of land at issue, 45 acres are unwalkable, but this land serves as a buffer to protect members' need for privacy. According to Whiddon, "without the buffer ... it's not possible to maintain the physical sacred sanctity of these physical places." R.R. 46a.

Roger Grandstaff, another member, agreed with Whiddon's assertion that the privacy offered by the unwalkable land is essential to the existence of the sanctuary. Another member, Professor Alan Shear, testified that "privacy provides the congregation with an element of safety in that they can practice their religion without any doubt of interference." [1] R.R. 105a. With respect to the 45 acres of unwalkable land on the Property, Shear stated that the "fact that you can't walk on them does not make them less sacred. The fact that they are barriers or [enhance] privacy does not make them less sacred." R.R. 107a.

At the conclusion of the hearing, the trial court granted Taxpayer an exemption for the following areas: the Labyrinth, the main parking area, the Stone Circle, the Commons Village Green, the Drum or Fire Circle, the Sweat Lodge, the Fox Altar, the campsites and the unwalkable cliffs immediately surrounding the Sweat Lodge. The trial court concluded that Taxpayer was not entitled to a tax exemption for the remaining area of the Property because it is not primarily used for worship. The non-exempt area includes the 45 acres of unwalkable land (excluding the cliffs immediately surrounding the Sweat Lodge), the kitchen building, the open air pavilion, two storage sheds, the shower houses, and the dormitory. Taxpayer now appeals the trial court's order with respect to the nonexempt areas.

On appeal,[2] Taxpayer raises six issues. First, it contends that the trial court erred in holding that Taxpayer was not entitled to an exemption for the entire 90 acres. Specifically, Taxpayer challenges the trial court's conclusion that the entire Property is not used for actual regularly stated religious practice and is not necessary for the occupancy and enjoyment of the tax exempt property. In issues two through five, Taxpayer focuses on four distinct areas of the Property and argues that each should be tax exempt for factual reasons applicable to each area. Finally, in its sixth issue, Taxpayer contends that the trial court erred by failing to specifically state how many acres it deemed tax exempt.

## Tax Exemption for Places of Religious Worship

■ The Pennsylvania Constitution states that the "General Assembly may by law exempt from taxation: ... (i) Actual places of regularly stated religious worship[.]" Pa. Const. art. VIII, § 2. In accordance with this constitutional authority, the legislature enacted Section 204(a)(1) of the General County Assessment Law,[3] which states:

(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

(1) All churches, meeting-houses, or other *actual places of regularly stated*

---

1. An additional member, Thomas Williams, offered similar testimony about the importance of privacy for Taxpayer's religious practices.

2. This Court's scope of review in a tax appeal case is limited to determining whether the trial court abused its discretion, committed an error of law, or made findings of fact unsupported by substantial evidence. *Benedictine Sisters of Pittsburgh v. Fayette County Board of Assessment Appeals*, 844 A.2d 86, 88 n. 3 (2004).

3. Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204.

*religious worship*, with the ground thereto annexed *necessary for the occupancy and enjoyment of the same*[.]

72 P.S. § 5020–204(a)(1) (emphasis added). The burden of proof rests on the taxpayer seeking an exemption to prove that the property is an actual place of regularly stated worship or is necessary for the occupancy and enjoyment of the property used for worship. *Benedictine Sisters*, 844 A.2d at 88.

This Court's decision in *Mount Zion New Life Center v. Board of Assessment and Revision of Taxes and Appeals*, 94 Pa.Cmwlth. 439, 503 A.2d 1065 (1986), is instructive of the meaning and application of Section 204(a)(1) of the General County Assessment Law. In *Mount Zion*, the taxpayer was a Christian retreat that provided accommodations to clergy so that they could focus on Christian learning, prayer, counseling, and spiritual encouragement. The retreat requested a tax exemption for its entire property, but the county denied it because there was no specific sect attached to the retreat. On appeal, this Court reversed.

In reaching this conclusion, this Court first considered the provision in Section 204(a)(1) exempting "actual places of regularly stated religious worship." 72 P.S. § 5020–204(a)(1). We explained that "tax exemption is authorized by statute in those places in which the primary purpose is worship and other activities are merely incidental." *Mount Zion*, 503 A.2d at 1071. Applying this so-called "primary purpose" test, this Court held that the retreat was entitled to an exemption for its meeting hall, a portion of the house and two rooms in its lodge because those places were primarily used for prayer. We affirmed the county's denial of an exemption for the portion of the house that was used for lodging, the living room of the retreat center's manor house, the storage areas, and the rooms in the lodge that were not used for prayer. We also denied tax exempt status to three outdoor areas that were primarily used for worship, but too irregularly to qualify for an exemption under Section 204(a)(1).

This Court next considered the second part of Section 204(a)(1), *i.e.*, whether any of the retreat's property was necessary for the occupancy and enjoyment of the exempt property. Citing *First Baptist Church of Pittsburgh v. City of Pittsburgh*, 341 Pa. 568, 20 A.2d 209 (1941), the *Mount Zion* court explained that "necessary" does not mean absolute necessity but, rather, that the property must be more than merely desirable. *Id.*

In *First Baptist Church of Pittsburgh*, a church sought a tax exemption for a landscaped parcel of land behind the church building. The church argued that the parcel was necessary for the occupancy and enjoyment of the church. The parcel had been purchased to prevent the construction of an apartment building, which "would have detracted from the beauty of the church." *Id.* at 212. In holding that the church was not entitled to an exemption, the Pennsylvania Supreme Court explained that "the meaning [of Section 204(a)(1) ] is limited to reasonable necessity and contemplates among other matters the inclusion of sufficient ground for entrance and exit and for light and air." *First Baptist Church of Pittsburgh*, 20 A.2d at 213. The Court concluded that if the church's "lot in its entirety is exempt, little limitation will be placed on the amount of land that may be taken over by a church, thereby casting an additional burden on other taxpayers." *Id.*

Taxpayer argues that the entire Property is either an actual place of religious worship or is necessary for the occupancy and enjoyment of the places of worship.

Alternatively, Taxpayer argues that specific enumerated portions of the Property in addition to those identified by the trial court meet this test. Because an analysis of the Property as a whole would still require an analysis of each of its constituent parts, we focus on the constituent parts. For each constituent part, we consider whether Taxpayer is entitled to an exemption as a place of worship or as a place "necessary" for worship.

## A. Places of Regularly Stated Religious Worship

### 1. Cliffs

■ Sheer cliff faces border many of the areas along the river on Taxpayer's Property.[4] The only walkable area on the cliffs is a three-foot wide path that was carved out of the cliff face prior to Taxpayer's acquisition of the Property. Taxpayer contends that the cliffs are places of regularly stated religious worship because the "North Cliff Walk" ceremony is performed there. R.R. 61a. Whiddon testified that the "North Cliff Walk" ceremony is used to evoke a "psycho-emotive" experience for members. *Id.*

The trial court found that the cliffs along the river are not places of "regularly stated religious worship." PA. CONST. art. VIII, § 2(a)(1). By Whiddon's own admission, the cliffs are used only once every three years for a religious ceremony. R.R. 61a. Other witnesses emphasized that the cliffs provide privacy, which relates not to the "regularly stated religious worship" exemption but, rather, to the "reasonably necessary" standard. The trial court did not err in concluding that the cliffs are not exempt as places of regularly stated religious worship.

### 2. River

■ Taxpayer contends that the river that flows through the Property should be tax exempt as a place of regularly stated worship because baptisms and other religious rites are performed there. Because religious rites are not restricted to any particular portion of the river, Taxpayer asserts that the entire span of the river that runs through the Property should be exempt.

When asked what portion of the river is actually used for religious ceremonies, Whiddon responded that "there are three places where to my personal knowledge [a] ceremony of people physically in the river ha[s] been performed and the Hemlock Hole is one of them." R.R. 72a–73a. Whiddon testified that Hemlock Hole and two other areas of the river are used for recreational swimming. Whiddon also explained that some portions of the river are not open for members to use because they are too dangerous or are "utterly impassable." R.R. 73a.

In light of the foregoing testimony, we agree with the trial court that Taxpayer uses the river, parts of which cannot be used at all, primarily for recreation and only incidentally for religious rites. *Mount Zion*, 503 A.2d at 1071. The trial court did not err in denying Taxpayer's exemption of the river as a place of regularly stated religious worship.

### 3. Buildings

■ The Property has a kitchen, open air pavilion, two storage sheds, a shower and toilet facility and a dormitory. Taxpayer argues that these buildings should be exempted as places of regularly stated religious practice. On occasion, the kitchen is used to prepare sacred food for cere-

---

4. The cliffs discussed in this part of the opinion do not include the unwalkable cliffs surrounding the Sweat Lodge, which are considered *infra*.

monies, but Taxpayer offered no evidence as to why the other buildings should be exempt.

The Board counters that the primary purpose of the kitchen is not for religious services. We agree. *In re Order of St. Paul the First Hermit,* 873 A.2d 31 (Pa. Cmwlth.2005) is instructive. There, a church sought a tax exemption for a cafeteria and a Polish delicatessen it operated on an adjoining parcel of land. In denying the exemption, this Court explained that "the primary purpose of the cafeteria and Polish delicatessen is to provide visitors to the [church] with a place to purchase food on the weekends, even though the cafeteria may occasionally be used for religious and cultural performances." *Id.* at 39.

Similarly, here, Taxpayer's kitchen is only occasionally used for religious services; it is most often used as a convenient place to provide food to guests of the campsite. The remaining buildings are not tax exempt as places of regularly stated religious practice because Taxpayer did not offer evidence in support of that assertion, as was its burden. The trial court did not err in denying a tax exemption of the above-listed buildings.

### 4. Unspecified Areas of the Property

■ Taxpayer contends that other portions of the Property, not included in the above categories, are places of regularly stated religious practices. These areas include, but are not limited to, swampland; steep, unwalkable land; and the land connecting the various sites. Taxpayer argues that

> nowhere in the transcript of the hearing is an exhaustive list of places of regularly stated worship given. No attempt to do so was made. It is not appropriate

to dissect the many places of worship and other features of the properties since the type of worship enjoyed by the congregants differs.

Brief of Taxpayer at 16. Essentially, Taxpayer argues that because religious worship could occur anywhere on the Property at any time, the entire Property is a place of "regularly stated religious worship." PA. CONST. art. VIII, § 2(a)(1).

In *Mount Zion,* this Court explained that "stated" means "fixed, established, occurring at regular times, as stated hours of business ... statedly means at certain times, not occasionally." *Mount Zion,* 503 A.2d at 1068. Taxpayer did not show that religious practices occur even occasionally on the unspecified areas of the Property. Its witnesses simply stated, in conclusory fashion, that religious practices *could* potentially occur in these areas. This is not sufficient to satisfy the *Mount Zion* standard for a place of "regularly stated religious worship." The trial court did not err in denying an exemption for the unspecified areas of the Property.

### B. Places Necessary for the Occupancy and Enjoyment of Religious Practice

We turn, next, to the second basis in Section 204(a)(1) for a tax exemption, *i.e.,* for property that is necessary for the occupancy and enjoyment of regularly stated religious worship. Taxpayer makes two distinct arguments for why its land and buildings are necessary for the occupancy and enjoyment of its tax exempt property: the land provides a necessary privacy buffer for Taxpayer's members and the buildings are necessary to facilitate members' ability to participate in Taxpayer's ceremonies.[5]

---

5. Although Taxpayer makes separate arguments for each portion of the land, we will group these arguments together because the record provides insufficient detail about each

### 1. Privacy Concerns: Land

■ The trial record is replete with evidence regarding Taxpayer's need for privacy when conducting religious rituals. Taxpayer's witnesses testified that members will not participate in Taxpayer's religion without privacy. Taxpayer's witnesses also testified that some religious ceremony officiants will not perform religious rites without the guarantee of privacy. This testimony established that a privacy buffer is necessary to protect Taxpayer's members from observation by non-members and for the occupancy and enjoyment of the religious sites on Taxpayer's land. Accordingly, we reverse the trial court's holding that none of the 45 acres of unwalkable land are not entitled to an exemption. How many of those 45 acres and which specific areas are exempt must still be determined. Accordingly, we will remand this matter to the trial court to determine how much of the unwalkable land is necessary for the occupancy and enjoyment of the areas of regularly stated religious worship.

### 2. Operational Concerns: Buildings

■ Taxpayer contends that the buildings, i.e., kitchen, open air pavilion, two storage sheds, shower and toilet building, and dormitory, should be tax exempt because they are necessary for the occupancy and enjoyment of Taxpayer's religious sites. Taxpayer cites our Supreme Court's decision in *Wesley United Methodist Church v. Dauphin County Board of Assessment Appeals*, 585 Pa. 677, 889 A.2d 1180 (2005). In that case, a church sought a tax exemption for its parking lot. In allowing the exemption, the Court explained:

> In this day and age, parking lots may be a necessity for a church, rather than just a convenience. People and churches have both moved away from towns, and many people are no longer within walking distance of their church. To attend, they are required to drive and park a vehicle. With no available parking, church-goers may be forced to seek religious express elsewhere, causing a decrease in membership and impeding the ability of the church to exist.

*Id.* at 1182. Stated another way, the church was entitled to a tax exemption for its parking lot because it was necessary for the occupancy and enjoyment of the church itself.

Applying *Wesley United*, the trial court concluded that Taxpayer's campsites are analogous to parking lots and, therefore, tax exempt. Taxpayer's witnesses confirmed that member participation in Taxpayer's services would be greatly hindered without the campsites because most members live far away and require overnight accommodations.[6] The trial court did not find that the dormitory was similarly necessary, even though Taxpayer presented evidence that it built the dormitory to accommodate older guests who are unable to stay at the campsites. We can discern no reason for treating the dormitory differently from the campsites. Taxpayer proved that both are necessary for the occupancy and enjoyment of the property used for regularly stated worship. Accordingly, we affirm the trial court's grant

portion. We will consider the necessity of the buildings for the occupancy and enjoyment of the tax exempt property separately because it involves different arguments by Taxpayer.

**6.** The trial court did not consider the ruling in *Mt. Zion*, 503 A.2d at 1071, which focused on whether a dormitory was incidentally, not primarily, used for worship. However, this test did not consider the reasonable necessity for worship test recognized in *First Baptist Church of Pittsburgh*, 20 A.2d at 213.

of an exemption for the campsite and reverse the denial of an exemption for the dormitory.

The trial court found that the remaining buildings, *i.e.*, kitchen, open air pavilion, storage sheds, and shower and toilet facilities, are not entitled to a tax exemption. We agree. Taxpayer's witnesses did not testify that these buildings are necessary to its religious practices, only that they are conveniences. Accordingly, we affirm the trial court's holding that Taxpayer's non-dormitory buildings are not exempt under Section 204(a)(1) as necessary for the occupancy and enjoyment of places of actual worship.

## C. Remand Request

Finally, Taxpayer and the Board both request that this Court remand the case to the trial court to determine how much of Taxpayer's Property is tax exempt. Before the trial court, the Board conceded that 10 acres of Taxpayer's 90–acre Property was tax exempt. The trial court agreed with the Board regarding the *areas* that were exempt, but the trial court did not specifically agree with the Board's *calculation of acreage* for those areas. Furthermore, the trial court granted tax exempt status to additional sites without specifying the acreage of those exempt areas. With the addition of the property exempted by this decision, the trial court must determine the total acreage exempt under Section 204(a)(1).

## Conclusion

We affirm the trial court's determination that the buildings (besides the dormitory) are not exempt. We reverse the trial court's decision that the dormitory is not exempt. We reverse the trial court's determination that the entire 45 acres of unwalkable property (the river, the cliffs adjoining the river, and other unenumerated property) are not exempt. The matter is remanded to the trial court to determine, in accordance with this decision, the specific acreage of Taxpayer's property that is exempt under Section 204(a)(1) of the General County Assessment Law, 72 P.S. § 5020–204(a)(1).

## *ORDER*

AND NOW, on this 16th day of September, 2014, the order of the Court of Common Pleas of Bedford County, dated September 20, 2013, in the above-captioned matter is hereby **AFFIRMED** in part; **REVERSED** in part; and this matter is **REMANDED** for further findings consistent with this opinion.

Jurisdiction relinquished.