EVANGEL BAPTIST CHURCH,
Appellant,

v.

MIFFLIN COUNTY BOARD OF
ASSESSMENT APPEALS.

Evangel Baptist Church,

v.

Mifflin County Board of
Assessment Appeals,

Appeal of Mifflin County
School District.

Evangel Baptist Church,

v.

Mifflin County Board of
Assessment Appeals,

Appeal of Borough of Lewistown.

Evangel Baptist Church,

v.

Mifflin Co. Assessment Appeal and
Mifflin Co. School District,

Appeal of Mifflin County Board
of Assessment Appeals.

Commonwealth Court of Pennsylvania.

Argued Dec. 2, 2002.
Decided Jan. 31, 2003.

Erik W. Stanley, Longwood, FL, for
appellant.

Bruce S. Nielsen, Lewistown, for appellee, The Borough of Lewistown.

Jeffrey L. Snook, Lewistown, for appellee, Mifflin County School District.

Before: COLINS, President Judge, SIMPSON, Judge, and MIRARCHI, Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Before this Court are the cross-appeals of Evangel Baptist Church (Evangel), the Mifflin County School District, the Borough of Lewistown and the Mifflin County Board of Assessment Appeals (Board) from a decision of the Court of Common Pleas of Mifflin County (trial court) which granted in part and denied in part Evangel's appeal from a decision of the Board denying Evangel's request for an exemption from real estate taxes. We affirm in part and reverse in part.

Evangel owns two parcels of land which adjoin but are separate from Evangel's church building. One parcel contains a large building known as the Family Life Center, the other parcel contains a residential house. On May 15, 2000, Evangel submitted an application for an exemption from real estate taxes for these two parcels. The Board denied Evangel's request and Evangel appealed to the trial court. The School District and the Borough intervened in the appeal. Following a hearing, the trial court issued an order finding that the Family Life Center was entitled to a tax exemption because the primary purpose of the property is for worship and religious purposes. The trial court also found that the residential house was not entitled to a tax exemption because the primary purpose of the property was not

for worship and religious purposes, but to provide persons invited by Evangel with a place to stay. On May 17, 2002, the trial court denied Evangel's request for attorney's fees. Evangel, the Borough, the School District and the Board[1] have appealed the trial court's order to this Court.

*Evangel's Appeal*

■ On appeal, Evangel argues that the denial of a tax exemption for the house violates Evangel's federal constitutional rights, and the house is entitled to a tax exemption as an actual place of regularly stated religious worship and as a purely public charity. This Court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or made findings unsupported by substantial evidence. *Hahn Home v. York County Board of Assessment Appeals,* 778 A.2d 755 (Pa.Cmwlth.2001).

■ Section 202 of The Fourth to Eighth Class County Assessment Law (Law)[2] sets forth the following standard for exemptions from taxation:

(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:

(1) All churches, meeting-houses or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same.

Evangel has the burden of proving entitlement to an exemption from taxation. *In re Sewickley Valley YMCA Decision of*

1. The Borough, the School District and the Board will be referred to collectively as the Taxing Authorities.

2. Act of May 21, 1942, P.L. 571, *as amended,* 72 P.S. § 5453.2202.

*Board of Property Assessment,* 774 A.2d 1 (Pa.Cmwlth.2001).

At the hearing before the trial court, Evangel presented the testimony of Dwayne Aurand, the chairman of the deacon board. Aurand testified that two rooms of the house are used every Sunday for Sunday school classes. Aurand also testified that the house is used for men's fellowship which is scheduled for the second Monday of the month. The house is also used for women's fellowship which is scheduled for the second Tuesday of the month. Aurand testified that the fellowship meetings are occasionally held at other locations, just as a change of pace. Aurand also testified that there are two bedrooms and a bathroom in the back of the house. Aurand testified that once a year Evangel has a missions conference where the missionaries that it supports come back to the church. Aurand testified that missionaries stay at the house approximately three or four times a year. He testified that if missionaries stayed at the house, it is normally for a scheduled event held at the church. Upon cross-examination, Aurand testified that the attorneys representing Evangel spent the night prior to the hearing in the house.

The trial court found that house was not entitled to a tax exemption because the primary purpose of the house was not for religious worship. The trial court stated:

> The house is used to provide living space for visiting missionaries, speakers, even Evangel's counsel and experts. The house is not the day-to-day residence for Evangel's minister or any other church official. Although the house is used for Sunday School and fellowship meetings, these groups are small and the meetings occasionally take place at other locations including private homes. The primary purpose of the house is to provide people invited by Evangel a place to stay and is

more like a parsonage than a place of worship.

Trial Court Opinion, p. 5. The trial court went on to note that, in *Mount Zion New Life Center v. Board of Assessment and Revision of Taxes and Appeals,* 94 Pa. Cmwlth. 439, 503 A.2d 1065 (1986), this Court held that a manor house was not entitled to tax exemption where the living room was used for worship and teaching but where the manor house also served as a residence for a family.

In *Mount Zion,* a nonprofit corporation operating a Christian retreat center sought tax emption as an actual place of regularly stated religious worship. The retreat center consisted of one hundred and four acres of land and included the following buildings: a main building, a meeting hall, a faith house, and a manor house. The Court first determined that the worship conducted at the retreat center constituted regularly stated religious worship even though the identity of the individual worshippers and their religious affiliation changed from week to week. The Court stated that "the regularity and constancy of the conduct of worship, virtually on a weekly basis, brings the primary application and use of at least part of the premises clearly within the concept of being a place of regularly stated religious worship." *Id.* at 1069.

The Court in *Mount Zion* then considered whether, for purposes of tax exemption, an actual place of regularly stated religious worship is required to be used exclusively for religious worship. The Court concluded that tax exemption is authorized in those places in which the primary purpose is worship and other activities are merely incidental. The Court then examined the purposes for which the buildings were used. The Court concluded that the meeting hall was exempt because the retreatants used it primarily as a facility

for prayer and teaching. The portion of the faith house which retreatants used for worship and teaching was exempt; the lodging space within the faith house was taxable. The two rooms within the main building which retreatants use for prayer and teaching sessions were exempt from taxation, all other areas within the main building were taxable. As to the manor house, the Court concluded that, although small groups of retreatants use the living room of the house for worship and teaching, the house also served as the home of the administrator and his family. The Court concluded that because the center had not proven that religious worship is the primary use of the living room in the manor house, the center was not entitled to tax emption as to the manor house.

■ In the case before us, the chairman of the deacon board testified that missionaries stay at the house during the missions conference which is held once a year. He also testified that missionaries stay at the house three or four times a year and that their stay is normally for a scheduled event at the church. Thus, the testimony established that the house was used as a residence on an occasional basis, and mainly for church-related activities. The use of the house is distinguishable from *Mount Zion* where the manor house was used as the day-to-day residence of the administrator and his family.

The testimony of the chairman of the deacon board establishes that the house was used for Sunday school classes and men's and women's fellowship meetings. The Taxing Authorities rely on *Mullen v. Commissioners of Erie County*, 85 Pa. 288, 291 (1877), for the proposition that "buildings put up for church purposes, as for Sunday schools, lectures, and parsonages," were not intended to be exempted from taxation. The issue before the Supreme Court in *Mullen* was whether a cathedral which was under construction was exempt from taxation as an actual place of religious worship. Thus, the Supreme Court's statement regarding buildings put up for church purposes is merely dicta.

The testimony before the trial court established that the house is used for weekly Sunday school classes and for monthly men's and women's fellowship meetings. The testimony also established that missionaries stay at the house once a year for Evangel's missions conference and three to four times a year for church-related activities. The testimony thus establishes that the primary use of the house is for religious purposes and the other uses occur merely on an occasional basis. The trial court's finding that the primary use of the house is to provide people invited by Evangel a place to stay, is not supported by substantial evidence.[3]

### The Taxing Authorities' Appeal

The Taxing Authorities argue that the trial court erred in concluding that the Family Life Center was tax exempt. The Taxing Authorities argue that the Family Life Center is unfinished and only partially used, is situated on a parcel of real estate that is separate and distinct from the church building, and is being used for educational, social and recreational purposes, rather than for tax exempt activities.

At the hearing before the trial court, the chairman of the deacon board, testified that the Family Life Center contains a large all-purpose room, a kitchen, a dining area, several classrooms, an office and restrooms. The all-purpose room is used every Wednesday night from September

---

3. Because we have concluded that the primary use of the house was for religious purposes, we need not consider Evangel's other arguments regarding the house.

through May for the AWANA program.[4] The all-purpose room has been used for a youth program, basketball games on Thursday nights, and concerts. The chairman testified that Evangel holds the basketball games and concerts as a way of attracting people who would not otherwise come to the church.

The chairman testified that the dining room will be used for the weekly meetings of the Evangelders, a senior citizen group. As part of their meetings, the Evangelders have Bible study and, generally, a speaker. The chairman testified that the dining room is handicapped-accessible while the church is not. The chairman also testified that the classrooms will be used for AWANA activities and for Sunday school. The office area will be used for additional staff. One of the classrooms will be shared by the Evangelder director and the AWANA director and it will also be used for counseling. The chairman testified that the Department of Labor and Industry has given approval for occupancy for the all-purpose room, the foyer and the restrooms. However, the chairman testified that it is Evangel's intention to occupy the remaining areas shortly. The chairman testified that ceiling tiles have to be installed and kitchen cabinets hung.

The Taxing Authorities first contend that Evangel is not entitled to a tax exemption for the Family Life Center because the building is unfinished. In support of their argument, the Taxing Authorities rely on *Mullen v. Commissioners of Erie County*. In *Mullen*, the Supreme Court noted that the cathedral had been in the course of construction for several years and its expected date of completion was not known. In the case before us, the Family Life Center received approval for occupancy for part of the building and activities were conducted there. The testimony also established that Evangel expected the work to be finished shortly. Thus, the Family Life Center is factually dissimilar from the cathedral in *Mullen*.

 The Taxing Authorities next argue that the trial court erred in determining the primary purpose of the Family Life Center. The trial court found that the Family Life Center "is used occasionally for recreational purposes but the primary purpose of the Center is for AWANA and 'Evangelders' meetings and activities, Sunday School, Bible study, religious gatherings too large for the sanctuary and office space for these religious activities." Trial Court Opinion, p. 5. In *Mount Zion*, this Court held that a meeting hall, used primarily as a facility for prayer and teaching, was exempt from taxation. The activities conducted in the Family Life Center are similar to the activities conducted in the meeting hall in *Mount Zion*. Accordingly, we conclude that the trial court did not err in finding that Evangel was entitled to a tax exemption for the Family Life Center.

*Attorney's Fees*

Evangel argues that it is entitled to an award of attorney fees and costs as a prevailing party pursuant to 42 U.S.C. § 1988.[5] In *Human Development of Erie, Inc. v. Zoning Hearing Board of Millcreek*

---

4. AWANA is an acronym for Approved Workmen Are Not Afraid. The program is for children ages five through eighth grade and consists of Bible study and activity time. Children who are members of the church and other children from the community may participate in the AWANA program.

5. The Civil Rights Attorneys' Fee Award Act, 42 U.S.C. § 1988, provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee" in certain enumerated civil rights actions.

*Township,* 143 Pa.Cmwlth. 675, 600 A.2d 658 (1991), the appellants challenged a zoning ordinance on the basis that it violated, *inter alia,* the Equal Protection Clause of the United States Constitution. The trial court found that the zoning ordinance violated the Equal Protection Clause and the Fair Housing Act, 42 U.S.C. §§ 3601–3619. The trial court denied the appellants' request for attorney's fees and costs. On appeal, this Court held that an appeal from an adverse decision of a zoning hearing board is part of the administrative agency process and not a lawsuit. The Court stated:

> A lawsuit in Pennsylvania is a civil action commenced in a court of competent jurisdiction in accordance with and subject to the Pennsylvania Rules of Civil Procedure. Rule 1007 of the Pa. R.C.P. provides that an action is commenced by filing a praecipe for writ of summons, a complaint or an agreement of amicable action. To the contrary, a Notice of Appeal is not filed pursuant to the Pa. R.C.P. because the rules are inapplicable to all statutory appeals, including one from the zoning hearing board.

*Id.* at 662. This Court held that, because the zoning appeal was not a lawsuit, the appellants were not entitled to attorney's fees under Section 1988.

In the case before us, a tax assessment exemption appeal is a statutory appeal and not a lawsuit. Therefore, under the reasoning of *Human Development of Erie,* attorney's fees may not be awarded pursuant to Section 1988. Evangel attempts to distinguish *Human Development of Erie* on the basis that the trial court in *Human Development of Erie* did not conduct a *de novo* hearing and sat as an appellate court, whereas, in the case before us, the trial court took testimony and rendered a decision based on the testimony and the evidence presented. Evangel's attempt to distinguish *Human Development of Erie* is unpersuasive. The Court in *Human Development of Erie* looked primarily on how the action was initiated and whether the action was governed by the Rules of Civil Procedure.

The order of the trial court is reversed insofar as it denied a tax exemption for the residential house and affirmed in all other respects.

### ORDER

AND NOW, this 31st day of January, 2003, the order of the Court of Common Pleas of Mifflin County in the above-captioned matter is reversed insofar as it Evangel Baptist Church denied a tax exemption for the residential house and affirmed in all other respects.