### BENEDICTINE SISTERS OF PITTSBURGH, PA,

v.

### FAYETTE COUNTY BOARD OF ASSESSMENT APPEALS and Fayette County, Appellants.

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 2004.

Decided March 8, 2004.

---

John S. Cupp, Jr., Uniontown, for appellants.

Matt A. Jarrell, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, J., LEAVITT, J., and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

The County of Fayette (County) appeals from an order of the Court of Common Pleas of Fayette County (trial court) granting a real estate tax exemption to the Benedictine Sisters of Pittsburgh (Benedictine Sisters) for property they used for religious retreats. The trial court held that the property was used as a place of regularly stated religious worship and, as such, was exempt from taxation.

The property in question is located at 168 Bottom Road, Mill Run in Springfield Township in Fayette County (Property). It consists of approximately four acres of land improved by a standard three-bedroom, ranch-style house, a swimming pool and a detached garage. On October 22, 2001, the Benedictine Sisters filed an application with the Fayette County Board of Property Assessment, Appeals and Review (Board) for a tax exemption,[1] in which they asserted the right to an exemption as a purely public charity.[2] The Board denied the application as untimely for years 2001 and 2002, but it notified the Benedictine Sisters that it would consider the application for the next tax year, i.e., 2003. A hearing was held in October 2002, and on January 23, 2003, the Board denied the application. The Benedictine Sisters appealed the decision to the trial court, which conducted an evidentiary hearing.

At the hearing before the trial court, Sister Michelle Farabaugh, a member of the Benedictine Sisters, described a retreat as primarily a time of spiritual renewal. Our lives are very busy...so we recognize the absolute need for people to take some time to step back and have the leisure of prayer and reflection. Reproduced Record 217a (R.R. ——). While on retreat, [w]e pray, we read. Sometimes we are on retreat alone and sometimes were with a group, and when were with a group then we will have discussion together about various kinds of spiritual topics. We may listen to tapes, watch videotapes of various conference talks that have been given in other places. R.R. 207a. We do have [mass] occasionally. We don't have anyone who would come on a regular basis to celebrate mass or to lead a prayer, but I would say several times a year that does happen as part of the retreat program. R.R. 218a.

She testified that the 77 Benedictine Sisters are required to make an annual retreat that lasts three to seven days. The Property is used exclusively for these retreats nine months out of the year; the rest of the time it is unoccupied. No Sister uses the Property as a permanent residence; all reside permanently at a

1. Prior to the filing of this application, the Benedictine Sisters had paid taxes on the Property. In 2000, however, the Property was assessed at $98,300, which may have been the event triggering their tax exemption application.

2. An institution of purely public charity is an institution which advances a charitable purpose, defined by statute as one or more of the following: (1) relief of poverty; (2) advancement and provision of education; (3) advancement of religion; (4) prevention and treatment of disease or injury, including mental retardation and mental disorders; (5) government or municipal purposes; (6) accomplishment of a purpose recognized as important and beneficial to the public and which advances social, moral or physical objectives. Act of November 26, 1997, P.L. 508, 10 P.S. § 375.

monastery outside of Pittsburgh. Occasionally the Sisters use the Property for relaxation, as opposed to retreat purposes, but that occurs at most, two or three weeks out of the year.

At the conclusion of the hearing, the trial court reversed the Board and granted the Benedictine Sisters an exemption from real estate taxes, reasoning that the Property was used as an actual place of regularly scheduled worship. It declined to address the issue of whether the Property was exempt as a purely public charity, deeming that question moot. The County then appealed to this Court.

On appeal,[3] the County raises two issues. First, it contends that the trial court erred in concluding that the Property qualifies as a place of regularly scheduled worship. Second, the County contends that the Property is not entitled to the exemption from real estate taxes as a purely public charity because the Property is used as a "vacation home," which is not the proper object for the tax exemption.

The Pennsylvania Constitution authorizes the General Assembly to pass general laws exempting certain property from taxation. It makes a distinction between "actual places of regularly stated religious worship" and "institutions of purely public charity."[4] Pursuant to this authority, Section 204(a)(1) and (3) of the General County Assessment Law,[5] sets

forth the following standard for exemptions from taxation.

> (a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
>
> (1) All churches, meeting-houses, or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same;
>
> * * *
>
> (3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose.

The taxpayer claiming entitlement to the exemption bears the burden of proof. *Evangel Baptist Church v. Mifflin County*

---

3. This Court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law or made findings unsupported by substantial evidence. *Hahn Home v. York County Board of Assessment Appeals,* 778 A.2d 755 (Pa.Cmwlth.2001).

4. It provides,
   (a) The General Assembly may by law exempt from taxation:
   (i) Actual places of regularly stated religious worship;

* * *

   (v) Institutions of purely public charity, but in the case of any real property tax exemptions *only* that portion of real property of such institution which is actually and regularly used for the purposes of the institution.
   Pa. Const. art. VIII, § 2(a)(i) and (v).

5. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§ 5020–204(a)(1) and (3).

*Board of Assessment Appeals*, 815 A.2d 1174 (Pa.Cmwlth.2003).

The leading case in this area of law continues to be *Mount Zion New Life Center v. Board of Assessment and Revision of Taxes and Appeals*, 94 Pa.Cmwlth. 439, 503 A.2d 1065 (1986). At issue in *Mount Zion* was whether a Christian retreat center was entitled to an exemption as an actual place of regularly stated religious worship.[6] The retreat center consisted of 104 acres of land and several buildings, including the main building, a meeting hall, a faith house, and a manor house. This Court determined that the retreat center was entitled to an exemption, noting that the regularity and constancy of the conduct of worship, virtually on a weekly basis, brings the primary application and use of at least part of the premises clearly within the concept of being a place of regularly stated religious worship. *Id.* at 1069. The Court also held that an actual place of regularly stated religious worship is not required to be used exclusively for religious worship. A tax exemption is authorized where the primary purpose of the property is worship, and other activities are merely incidental. Having established these principles, the Court examined the use of each building at the Mount Zion Center and its surrounding acreage. Some buildings were found exempt and others were not.[7]

In sum, *Mount Zion* stands for the principle that a property need not be used exclusively for regularly stated worship in order to qualify for an exemption. Further, *Mount Zion* gave a broad reading to worship, which includes prayer and teaching, *i.e.*, the predominant activity at a retreat center. *Mount Zion*, 503 A.2d at 1071. *Mount Zion* did not equate worship with a specific type of formal ceremony involving a church-type building where congregants gather.

This understanding of regularly stated worship was also expressed in *Evangel Baptist Church*, 815 A.2d at 1174. In that case, an exemption was granted for a residence on the basis that it was a place of regularly stated religious worship. In *Evangel Baptist Church*, the appellants testified that the house was not the day-to-day residence of the church's minister; rather, it was used for Sunday School classes and for monthly fellowship meetings. Although the house was used to occasionally house visitors, we concluded that this incidental use did not alter the conclusion that the primary purpose of the house was for religious purposes.

However, the County argues that because the Property is used to pursue the religious and monastic life of the Benedictine Sisters, it is not a place of worship. It contends that worship requires mass, which occurs only on occasion at the Property. It urges us to adopt the narrow

---

6. The principal issue in *Mount Zion* was whether regularly stated religious worship was taking place at the retreat center in light of the fact that the identity of the individual worshippers and their religious affiliation changed from week to week. This Court found in favor of the taxpayers on this issue.

7. The Court held that the meeting hall was entirely exempt because it was primarily used for prayer and teaching. The portion of the faith house used for worship and teaching was found exempt, but the lodging space within the faith house was taxable. The two rooms within the main building used for prayer and teaching were exempt from taxation, but all other parts of the main building were taxable. As to the manor house, the Court concluded that, although small groups occasionally used the living room of the house for worship and teaching, the house primarily served as the home of the administrator and his family. The manor house was found not entitled to an exemption.

reading of worship advanced in *Pennsylvania Conference of the Pentecostal Holiness Church v. Mercer County Board of Assessment Review*, 25 D.C.3d 536, 539 (1982), wherein the trial court provided that

> [w]orship connotes offerings, adoration, meditation and prayers of thanksgiving and petition. Education is not strictly a party thereof.

In addition, the County argues that a ranch-style house is not an actual place of worship.[8] In support, it relies upon the holding in *Second Church of Christ Scientist of Philadelphia*, 398 Pa. 65, 67, 157 A.2d 54, 55 (1959), holding that the exemption of church property is constitutionally restricted to the actual place of worship. In sum, the County asks that we determine that the Property is a vacation home and not a place of regularly stated worship.[9]

Here, the Benedictine Sisters use the Property for adoration, prayer and meditation; this constitutes worship as defined by *Pennsylvania Conference*. In any case, *Pennsylvania Conference*, which is not binding precedent, must be placed in the context of the binding precedent in *Mount Zion* and *Evangel Baptist Church*. Under *Mount Zion*, the fact that some education may be taking place at the property does not mean that education is the primary use of the property. Under both *Mount Zion*

and *Evangel Baptist Church*, the concept of worship is not limited to a formal service. The Benedictine Sisters engage in prayer, spiritual readings and discussions; these are the very activities found to be worship in *Mount Zion* and *Evangel Baptist Church*. As in *Mount Zion*, the identity of Sisters on retreat changes from week to week, but the use of the Property as a spiritual retreat is constant.

In sum, we agree with the trial court that the Benedictine Sisters satisfied their burden of showing that the Property's primary purpose is as a place of regularly stated worship.[10] No other conclusion is appropriate under the precedent of *Mount Zion* and *Evangel Baptist Church*.

Accordingly, we affirm the trial court.

### ORDER

AND NOW, this 8th day of March, 2004, the order of the Court of Common Pleas of Fayette County dated July 3, 2003 in the above-captioned matter is hereby affirmed.

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's decision because neither the ranch-style house nor the four acres of land upon which it sits in Fayette County that is used by the Benedictine Sisters of Pittsburgh (Benedictine Sisters) constitutes an "actual

---

8. The County argues that the house granted the exemption was adjacent to a church building and there is no church on the Property at issue here. However, there was no church building at the retreat center in *Mount Zion*. Our jurisprudence looks to the use of a building, not its appearance.

9. There was testimony established that the retreat was used at most two or three times a year by sisters for relaxation. The County's conclusion that the retreat is used as a vacation home is not supported by substantial evidence. The testimony that the retreat is used nine months out of the year for retreats

establishes that the primary purpose of the house is for religious purpose; the other use is merely occasional.

10. However, we note that the exemption for property used as a place of regularly scheduled worship is more restricted, not extended beyond ingress and egress and light and air. *See Second Church of Christ Scientist of Philadelphia v. City of Philadelphia*, 398 Pa. 65, 157 A.2d 54 (1960). However, the County did not raise this issue; issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa. R.A.P. 302.

place of regularly stated religious worship" as mandated by Article VIII, Section 2(a) of the Pennsylvania Constitution in order to be exempt from real estate taxation.

The Benedictine Sisters filed an application with the Fayette County Board of Property Assessment Appeals and Review (Board) for a tax exemption for tax year 2003 for property which they use as a retreat. The property consists of four acres of land with a three-bedroom ranch house, a swimming pool and a detached garage. After a hearing was held before the Board, the application was denied. The Benedictine Sisters appealed to the Court of Common Pleas of Fayette County (trial court) which also held a hearing. At that hearing, one of the Sisters testified that the 77 Benedictine Sisters, who live in a monastery outside of Pittsburgh, were required to make an annual retreat that lasted three to seven days. The property was used as a spiritual retreat for prayer and reflection nine months of the year for this purpose, and sometimes the retreats were with groups where they discussed various spiritual topics, listened to tapes or watched videotapes. The remaining three months of the year it was unoccupied. She also stated that the property was used for relaxation two or three weeks a year. The trial court reversed the Board and granted the property a real estate tax exemption because it was being used as an actual place of regularly scheduled worship. The County of Fayette (County) filed this appeal.

The majority affirms the trial court relying on *Mount Zion New Life Center v. Board of Assessment and Revision of Tax-* *es and Appeals,* 94 Pa.Cmwlth. 439, 503 A.2d 1065 (1986) and *Evangel Baptist Church v. Mifflin County Board of Assessment Appeals,* 815 A.2d 1174 (Pa.Cmwlth. 2003), concluding that because the Benedictine Sisters use it for adoration, prayer and mediation, the property is used as a place of regularly stated worship. I disagree with the majority because a retreat house is not what the drafters of Article VIII, Section 2(a)(i) of the Pennsylvania Constitution envisioned when they exempted an "actual place of regularly stated worship" from taxation.

Before the adoption of the 1874 Constitution, there was no limitation on power to grant exemptions from taxation. Because the General Assembly was granting exemptions capriciously, the drafters of that 1874 Constitution included a provision that placed limits on the power of the General Assembly as to how it could levy taxes as well as to whom it could grant exemptions.[1] As adopted by the electorate, Article IX, § 1, read: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity." The 1968 Amendments to the Constitution, among other things, renumbered Article IX, § 1, as the current Article VIII, §§ 1 and 2, splitting the uniformity provision

1. *See Donohugh's Appeal,* 86 Pa. 306, 309–10 (1878) ("[I]t is conceded that the legislature cannot go outside the class of cases in which the constitution permits exemption from taxation, but it is to be remembered that the provision of the constitution is not a grant of power to the legislature, which belongs else- where, and is therefore to be strictly construed as in derogation of the people's right. On the contrary, it is a restriction upon a legislative power which would otherwise be unlimited and unquestionable. It is a tying up of the legislative hand . . .").

from the exemption provisions. The provision dealing with religious exemptions is now numbered as Article VIII, Section 2(a)(i) of the Pennsylvania Constitution, specifying the extent to which the General Assembly can grant an exemption to churches and the like. It provides in relevant part:

The General Assembly may by [not be] law exempt from taxation:

(i) Actual places of regularly stated religious worship . . .

The drafters of the 1874 Constitution were quite explicit in their debates when circumscribing the type of property the General Assembly could exempt from taxation for religious purposes by limiting a religious exemption to an "actual place of regularly stated religious worship" rather than a place which was used for religious activities. At the debates which took place at the 1872 Convention to Amend the Constitution prior to Article IX's enactment, certain delegates attempted to expand the proposed language, which is similar to how it reads today, "the Legislature may exempt from taxation actual places of religious worship . . . ," to also include parsonages and land not exceeding five acres. In ultimately disallowing such an expansion of land and buildings, one delegate, Mr. Broomall, stated:

The privilege of exemption from taxation has been very much abused by the Legislature, and the people desire a correction of that evil. I think, however, that they will be satisfied with simply having their places of worship exempted, but would not be satisfied if the exemption were to be extended to the parsonages.

Debates of the Convention to Amend the Constitution of Pennsylvania 95 (1872). When it was suggested that the inclusion of the five acres could be withdrawn, Mr. Broomall stated that such a change alone would not help achieve the desired result. Another delegate, Mr. Cochran, explained: "If congregations are able to build parsonages, they are able to pay the taxes on them." *Id.* Ultimately, neither the additional acreage nor the parsonages were included in the language of the Constitutional amendment allowing for exemptions of real estate taxation for "actual places of religious worship." [2]

The drafters of the 1874 Constitution only wanted "actual places of regularly stated religious worship," not places where religious formation or religious education took place. Notwithstanding the restrictive language that the Constitution uses, we have exempted religious summer camps, *Mount Zion*, and fellowship halls where social events and Bible studies take place, *Evangel Baptist Church*. This is far afield from a church, temple or sanctuary, and more than the drafters of the 1874 Constitution desired to exempt. Because the Constitution only provides an exemp-

2. "The Pennsylvania Constitution only permits the legislature to do so within certain limits." *G.D.L. Plaza v. Council Rock School District*, 515 Pa. 54, 58, 526 A.2d 1173, 1175 (1987), quoting *Donohugh's Appeal.* The General Assembly, in Section 204 of the General County Assessment Code, Act of May 22, 1933, P.L. 853, Art. II, Sec. 204, *as amended*, 72 P.S. § 5020–204, provided:

The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
(a) All churches, meeting-houses, or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same; * * *.

No one has challenged that this provision is beyond the power conferred on the General Assembly by the Constitution.

tion for actual places of regularly stated religious worship and does not provide for any additional exemptions on houses, swimming pools, acreage or for places where religious classes take place, I would overrule our decisions in *Mount Zion* and *Evangel Baptist Church* and reverse the trial court.

Accordingly, I dissent.