**In Re: Appeal of ORDER OF ST. PAUL THE FIRST HERMIT from the County of Bucks Board of Assessment Appeals**

**Appeal of: St. Paul the First Hermit.**

Commonwealth Court of Pennsylvania.

Argued March 1, 2005.
Decided April 22, 2005.

Henry F. Siedzikowski and Raymond J. Santarelli, Blue Bell, for appellant.

David F. Conn, Trevose, for appellee, Bucks County Board of Assessment Appeals.

BEFORE: FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The Order of St. Paul the First Hermit (Appellant) appeals from the July 21, 2004 order of the Court of Common Pleas of Bucks County (trial court) that directed the Bucks County Board of Assessment Appeals (Board) to reassess portions of two buildings on Appellant's property for purposes of real estate taxes. Specifically, the trial court directed the Board to reassess the property as follows:

1. In [Appellant's] Visitor's Center, the space allocated to the cemetery offices, religious education classrooms and chapel shall be rendered exempt from real estate taxes. The area allocated to the museum, gift shop, cafeteria, and Polish delicatessen are all rendered taxable by the [Board].

2. In the Retreat House, the area allocated to two (2) chapels, the reference library, the confessional rooms, and the sacristy are rendered exempt from real estate taxes; the area allocated to meeting rooms and to the sleeping quarters for retreat programs are rendered to be taxable, and the [Board] is directed to allocate that portion of the real estate containing those activities as taxable.

3. The [Board] is ordered and directed to reassess the components of the Visitor's Center and Retreat House and reassess those buildings in accordance with the usages herein determined.

Trial Court's July 21, 2004 Order.

Essentially, Appellant asserts that the trial court erred in failing to conclude that Appellant's Visitor's Center and Retreat House in their entireties must be classified as tax exempt under Pa. Const. Art. VIII, § 2(a)(i)[1] and Section 204(a)(1) of The General County Assessment Law (Assessment Law)[2] as places of regularly stated religious worship. Appellant further asserts that the trial court erred in concluding that the Visitor's Center and the Retreat House did not qualify for a tax exemption as institutions of purely public charity under Pa. Const. Art. VIII, § 2(a)(v)[3] and Sections 5(a)-(f) of the Institutions of Purely Public Charity Act (Charity Act).[4] We affirm.

Situated on Appellant's property is the Shrine of Our Lady of Czestochowa (the Shrine), which is dedicated to the patron saint of Poland and is revered by not only Catholics of Polish origin, but also Catholics of many other nationalities. The Shrine is situated on 170 acres located in New Britain Township, Bucks County. Over 400,000 people annually visit the Shrine.

Appellant's property is divided into 11 parcels for real estate tax purposes. At issue in this case is Parcel 26–011–059 (the Parcel), which contains the Church, the

1. Article VIII, § 2(a) provides in part that "[t]he General Assembly may by law exempt from taxation: (i) Actual places of regularly stated religious worship...."

2. Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204(a)(1). This Section provides that "[t]he following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: (1)[a]ll churches, meeting-houses, *or other actual places of regularly stated religious worship*, with the ground thereto annexed necessary for the occupancy and enjoyment of the same...." (Emphasis added.)

3. Article VIII, § 2(a) provides in part that "[t]he General Assembly may by law exempt from taxation: .... (v)[i]nstitutions of purely public charity, *but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.*" (Emphasis added.)

4. Act of November 26, 1997, P.L. 508, 10 P.S. §§ 375(a)-(f).

Shrine, the Visitor's Center and the Retreat House. The Parcel, consisting of 25 acres, held tax exempt status from 1976 until November 2001. During that time, the Church and parking lots were constructed on the Parcel. In 2000, Appellant also began construction of the Visitor's Center and the Retreat House on the Parcel.

On January 1, 2002, Appellant received an interim real estate tax bill in excess of $120,000 per year for the four acres of the Parcel on which the Visitor's Center and the Retreat House are located. The Parcel's remaining 21 acres continue to be tax exempt.

Appellant appealed to the Board and, on March 19, 2002, a hearing on Appellant's request for a tax exemption was held. By letter dated July 15, 2002, the Board notified Appellant that on the advice of its solicitor it was denying Appellant's request.

Appellant appealed to the trial court and on June 29, 2004, the court held a *de novo* hearing on Appellant's challenge to the Board's determination that the newly constructed Visitor's Center and the Retreat House should be partially subject to real estate taxation. At the hearing, Appellant presented the testimony of Father Christopher Wieliczko, Prior of the Shrine. Father Wieliczko testified about the background of the Shrine and narrated a video regarding the Shrine while it was shown to the trial court. Father Wieliczko also testified regarding the various areas of the Visitor's Center and the Retreat House and the purposes for which these areas are used.

Appellant also introduced several exhibits into evidence which contained background information about the Shrine in general and the Visitor's Center and Retreat House in particular. The exhibits included Appellant's Constitution and By-Laws, its income and expense statements, and the income and expense statements for the Visitor's Center and the Retreat House.

With regard to the Visitor's Center, the trial court concluded that the cemetery offices, the religious education classrooms and the chapel were entitled to be exempt from taxation under Section 204(a)(1) of the Assessment Law as places essential to the primary religious undertaking of the Shrine. The court, however, determined that the museum, gift shop, cafeteria and Polish delicatessen were not essential to the underlying religious undertaking of the Shrine and thus were not entitled to a tax exemption.

With regard to the Retreat House, the trial court concluded that its two chapels, the reference library, the confessional rooms and the sacristy were entitled to be exempt from taxation under Section 204(a)(1) of the Assessment Law as being essential to the underlying religious use of the Shrine. The trial court, however, concluded that the sleeping quarters for retreatants, which consist of approximately 40 rooms, and the meeting room were not essential to the underlying religious purpose of the Shrine and, therefore, that they were subject to taxation.

The trial court further determined that Appellant did not demonstrate that the Shrine met the five-prong test for tax-exempt status as an institution of purely public charity established by the Supreme Court in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985), commonly known as the *HUP* test. To qualify as an institution of purely public charity under the *HUP* test, an institution must (1) advance a charitable purpose, (2) donate or render gratuitously a substantial portion of its services, (3) benefit a substantial and indefinite class of persons who

are legitimate subjects of charity, (4) relieve the government of some of its burden and (5) operate entirely free of private profit motive. The *HUP* test was codified into statutory law by the General Assembly in Sections 375(a)-(f) of the Charity Act, 10 P.S. §§ 375(a)-(f).

In the present case, it is undisputed that the Shrine advances a charitable purpose, operates free of a private profit motive and relieves the government of some of its burden. *See* Trial Court's July 21, 2004 Opinion at 3. The trial court, however, concluded that Appellant failed to show that the Shrine provides a benefit to a substantial and indefinite class of persons who are legitimate subjects of charity. *Id.* Having determined that the Shrine did not meet all five prongs of the *HUP* test, the trial court did not reach the issue of whether the Shrine donates or gratuitously renders a substantial portion of its goods and services. *Id.*

In view of its conclusions, the trial court directed the Board to reassess the component portions of the Visitor's Center and the Retreat House. In the Visitor's Center, the space allocated to the museum, gift shop (including the bookstore), cafeteria and Polish delicatessen was rendered taxable. In the Retreat House, the space allocated to the meeting rooms and sleeping quarters was rendered taxable.

■ Appellant's appeal to this Court followed.[5] In response to Appellant's appeal, the trial court filed an October 25, 2004 opinion rejecting Appellant's contention that the entirety of the Visitor's Center and the Retreat House should be exempt even though lesser or minor parts of the facilities do not qualify for tax exemptions under Section 204(a)(1) of the Assessment Law as places of regularly scheduled worship. In support of its determination, the trial court cited *St. Aloysius R.C. Church v. Fayette County Bd. of Assessment Appeals,* 849 A.2d 293 (Pa.Cmwlth.2004), where this Court affirmed the allocation of separate areas of the appellant's residence or "parsonage," into either tax-exempt or non tax-exempt status depending on whether that area could be classified as a place of *regularly* stated religious worship. We noted that *sporadic use* of the upper level of the parsonage for religious classes or meetings would not bring it within the scope of the exception.

In *St. Aloysius,* this Court also rejected the appellant's alternative contention that the upper level of the parsonage was entitled to an exemption for an institution of purely public charity. In *St. Aloysius,* we stated:

> Were we to allow the Church to receive a tax exemption for what is essentially its "parsonage" under the more liberal purely public charity provision, *where it is not operating an entity independent from the Church itself,* we would essentially be giving greater effect to the more general constitutional provision allowing for a charitable tax exemption for institutions of purely public charity than to the more specific exemption for places of regularly stated worship. This is contrary to the established principle of constitutional construction that, *where there is a conflict between a specific constitutional provision, which is applicable to a particular case, and certain general provisions which, but for such conflict, might apply, the specific provision will prevail.*

5. Our review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law or rendered a decision unsupported

by substantial evidence. *Borough of Homestead v. St. Mary Magdalen Church,* 798 A.2d 823 (Pa.Cmwlth.2002).

*Walsh v. Tate,* 444 Pa. 229, 234, 282 A.2d 284, 287 (1971). Further, this construction also would do violence to the presumption that every clause in a constitution is inserted for a useful purpose. *See id.* at 237, 282 A.2d at 288. Thus, we must avoid a construction that would render any portion of the constitution meaningless. *Id.* Allowing the Church to employ the purely public charity exception in this case would do just that.

849 A.2d at 296–297 (emphasis added).

## I.

■ Appellant's first argument is that the trial court erred in not determining that the Visitor's Center and the Retreat House are not rendered tax exempt due to the overall nature and purpose of the Shrine, which is more in the nature of a national shrine than a typical Catholic parish church. "Taxation of property is the rule; therefore, statutory exceptions must be strictly construed." *St. Mary Magdalen Church,* 798 A.2d at 828.

Father Wieliczko testified that the Shrine was designated by Pope John Paul II as a basilica [6] and is visited each year by thousands of religious pilgrims from around the world. Based on these facts, Appellant argues that the activities at the Shrine distinguish it from the church and parsonage in *St. Aloysius.* Appellant asserts that unlike the parsonage in *St. Aloysius,* nobody lives in the Retreat House and that the meals are provided in the Visitor's Center regardless of the pilgrim's ability to pay.

Although the Shrine attracts pilgrims from all over the nation as well recent immigrants from many countries, this Court does not believe that such facts provide a basis for distinguishing the Shrine

from the parish church in *St. Aloysius* for purposes of a real estate tax exemption under either Section 204(a)(1) of the Assessment Law, 72 P.S. § 5020–204(a)(1), or as an institution of purely public charity as defined in Sections 5(a)-(f) of the Charity Act, 10 P.S. § 375(a)-(f). The record in the present case indicates that visitors primarily come to the Shrine for religious purposes, *i.e.,* to attend Mass and receive spiritual guidance. As such, the Shrine must be classified for tax purposes as a place of regularly stated religious worship. Therefore, we do not believe that the Shrine is entitled to any different treatment in the determination of the tax-exempt status of its real estate than the parish church in *St. Aloysius.*

## II.

Appellant's second argument is that the trial court erred in determining that the entirety of the Retreat House is not used primarily for a religious purpose and/or is necessary for the use and enjoyment of the Shrine, a religious institution. Again, Appellant points out that the Retreat House is not used as a parsonage or a residence of any kind. Instead, Appellant asserts that the Retreat House is used exclusively for religious and spiritual retreats.

Appellant cites *Benedictine Sisters of Pittsburgh v. Fayette County Bd. of Assessment Appeals,* 844 A.2d 86 (Pa. Cmwlth.2004), for the proposition that an "actual place of regularly stated religious worship" does not have to be used exclusively for religious worship in order to qualify for a tax exemption under Section 204(a)(1) of the Assessment Law, 72 P.S. § 5020–204(a)(1). In *Benedictine Sisters,* we noted that the leading case on this

---

**6.** A basilica is defined as a "Roman Catholic church or cathedral having certain liturgical privileges—used as a canonical title <the church was raised to the rank of [basilica]>." Webster's Third New International Dictionary 182 (1993).

subject is *Mount Zion New Life Ctr. v. Bd. of Assessment and Revision of Taxes and Appeals*, 94 Pa.Cmwlth. 439, 503 A.2d 1065 (1986). In *Mt. Zion*, we noted that the term "religious worship" must be construed broadly to include prayer and religious teaching; we concluded that certain buildings in a retreat center located on a 104–acre tract which were *regularly used* for religious worship were entitled to an exemption.

Citing *Board of Home Missions and Church Extension of Methodist Episcopal Church v. City of Philadelphia*, 266 Pa. 405, 109 A. 664 (1920), we adopted the "primary purpose" test in *Mt. Zion* for determining whether a portion of a building qualifies as an actual place of religious worship. Under this test, a tax exemption is authorized for "those places in which the primary purpose is worship and other activities are merely incidental." *Mt. Zion*, 503 A.2d at 1071. This Court determined in *Mt. Zion* that certain portions of the buildings used by the retreatants for worship and teaching were exempt because they were primarily used for religious worship. The other areas, however, that were not primarily used for religious worship were not found to be tax exempt.[7]

In *Benedictine Sisters*, this Court determined that the entire property[8] that was used for religious retreats by the Benedictine Sisters of Pittsburgh, a religious order of 77 nuns, qualified for a tax exemption under Section 204(a)(1) of the Assessment Law as a place of regularly stated religious worship. We noted that the Benedictine Sisters used the property for prayer, spiritual readings and discussions.[9] We determined that these were the very activities found to constitute "religious worship" in *Mt. Zion*.

In applying the primary purpose test to the facts in the present case, we agree with the trial court as to its classification of the different areas of the Retreat House. Specifically, the trial court determined that the two chapels, the reference library, the confessional rooms and the sacristy were exempt from taxation as places of regularly stated religious worship. Conversely, the trial court determined that the meeting room and the 40 overnight rooms were not tax exempt inasmuch as they are not places of regularly stated religious worship.[10] As we noted in *St. Aloysius*, even though an area such as the meeting room may be used occasional-

7. Regarding land and non-structural improvements, we noted that "[t]he courts have commonly concluded that one acre for each place of worship is reasonably necessary to provide for ingress and egress." *Mt. Zion*, 503 A.2d at 1072.

8. In *Benedictine Sisters*, the subject property consisted of four acres of land and a three-bedroom house.

9. We rejected the board of assessment's argument that the retreat was essentially used as a vacation home on the ground that the primary purpose of the house was a religious purpose and that any other use of the property was merely occasional. *See also Evangel Baptist Church v. Mifflin County Bd. of Assessment Appeals*, 815 A.2d 1174 (Pa.Cmwlth. 2003) (although people were occasionally invited to stay at the house, it was primarily

used for weekly Sunday school classes and monthly fellowship meetings).

10. The Dissent takes the position that the primary purpose of the 40 overnight rooms in the Retreat House is worship as evidenced in part by the fact that pilgrims travel from around the world to worship at the Shrine. The Retreat House, however, is open only on the weekends, is not usually open to individuals and charges established rates for lodging, regardless of whether the rooms have television. Hence, we believe that the primary purpose of the "overnight rooms" is to provide lodging and, therefore, that the trial court did not err or abuse its discretion in determining that these rooms are not places of regularly stated religious worship.

ly for religious classes or meetings, it is not primarily used as a place of *regularly stated religious worship*. As such, it does not qualify for an exemption.

█ "The taxpayer claiming entitlement to the exemption bears the burden of proof." *Benedictine Sisters*, 844 A.2d at 88. Appellant did not establish that either the 40 overnight rooms used for lodging retreatants or the meeting room fell within the *Mt. Zion* definition of places of regularly stated religious worship; therefore, those portions of the Retreat House are not entitled to an exemption under Section 204(a)(1) of the Assessment Law, 72 P.S. § 5020–204(a)(1).

### III.

█ We also agree with the trial court's classification of the various portions of the Visitor's Center. The trial court determined that the chapel, the religious education classrooms and the cemetery offices were entitled to a tax exemption under Section 204(a)(1) of the Assessment Law. The trial court noted that the cemetery offices are essential to the Shrine's underlying religious use.

█ The trial court, however, determined that the museum, gift shop, cafeteria and Polish delicatessen were not tax exempt inasmuch as they were not places of regularly stated religious worship. Appellant contends that the religious items in the museum, gift shop and bookstore are sufficiently related to the primary religious

11. Father Wieliczko testified that in the cafeteria, individuals may receive food for free if they are *unable to pay*.

12. Appellant also contends that the areas in its Visitor's Center occupied by the restrooms, hallway and elevators, which comprise approximately 10% of the floor space, are necessary for the religious use and enjoyment of

use of the Shrine and thus entitle those areas to an exemption.

We disagree. Although there is no dispute that these areas contain items of religious, cultural and historical significance, including those sold in the gift shop and bookstore, we do not believe that such items are essential to the primary use of the Shrine as a place of regularly stated religious worship. As noted above, statutory exceptions to taxation must be strictly construed. *St. Mary Magdalen Church.*

█ Similarly, the primary purpose of the cafeteria and Polish delicatessen is to provide visitors to the Shrine with a place to purchase food on weekends,[11] even though the cafeteria may occasionally be used for religious and cultural performances. Hence, we do not believe that the food services provided in the cafeteria and delicatessen render those areas essential to the primary use of the Shrine as a place of regularly stated religious worship. Rather, they are primarily used as dining facilities. As a result, they do not qualify as places of regularly stated religious worship for purposes of Section 204(a)(1) of the Assessment Law.[12] *St. Aloysius; Mt. Zion.*

### IV.

█ Appellant's fourth argument is that the trial court erred and/or abused its discretion in determining that the Visitor's Center and the Retreat House are not entitled to a tax exemption in their entireties as institutions of purely public charity.

the Shrine. This issue was not addressed by *the trial court and the record does not reflect that it was raised before it.* Accordingly, it is waived. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a); *Dennis v. Southeastern Pennsylvania Transport. Auth.*, 833 A.2d 348 (Pa.Cmwlth.2003).

As discussed above, in *St. Aloysius,* we initially determined that the appellant church was not entitled to a tax exemption for the upper level of its parsonage under Section 204(a)(1) of the Assessment Law as being an actual place of regularly stated religious worship. We further determined in *St. Aloysius* that if we were to allow the appellant to receive a tax exemption under the more liberally construed public charity exception, where the parsonage is not operating independently from the church itself, "we would essentially be giving greater effect to the more general constitutional provision allowing for a charitable tax exemption for institutions of purely public charity than to the more specific exemption for places of regularly stated religious worship." 849 A.2d at 296–297. "This is contrary to the established principle of constitutional construction that, where there is a conflict between a specific constitutional provision, which is applicable to a particular case, and certain general provisions which, but for such conflict, might apply, the specific provision will prevail." *Id.* at 297. "Further, this construction also would do violence to the presumption that every clause in a constitution is inserted for a useful purpose." *Id.*

Our review of the record and Appellant's arguments throughout the underlying proceedings indicates that Appellant is seeking an exemption for the entire Parcel, including the Visitor's Center and the Retreat House, on the ground that the entire operation of the Shrine qualifies it as an institution of purely public charity. Consequently, it does not appear that Appellant is seeking individual tax exemptions for the Visitor's Center and the Retreat House as separate institutions of purely public charity operating independently of the Shrine itself.

Hence, we believe that our rationale in *St. Aloysius* is equally applicable here, where there is a similar conflict between the more specific exemption for an actual place of regularly stated religious worship and the more general provision allowing exemptions for institutions of purely public charity. In *St. Aloysius,* we concluded that "a church functioning as a church cannot receive a tax exemption for its parsonage under the institution of purely public charity exemption...." *Id.* In applying those same principles of constitutional construction in the present case, we conclude that the Shrine, which primarily functions as a Roman Catholic monastery and church, *i.e.,* a place of regularly stated religious worship, cannot receive a tax exemption for its Visitor's Center and Retreat House under the purely public charity provision where Appellant has failed to seek separate exemptions for these facilities on the ground that they operate independently of the Shrine. *Id.*

In the same vein, we believe that the *St. Aloysius* rationale applies to a determination of whether Appellant's property, analyzed as a single entity, is entitled to a tax exemption as an institution of purely public charity. To meet its burden of proof at the *de novo* hearing, Appellant relied primarily on the testimony of Father Wieliczko, Prior of the Shrine. Father Wieliczko, a native of Poland and ordained in Krakow, testified that the Shrine "is a spiritual place for Polonia, for all Polish people." N.T. 11; R.R. 11a.

Regarding the history of the Shrine, Father Wieliczko testified:

> And when Father Michael came during the communist regime in Poland; he was thrown out from Hungary in 1950 during the Hungarian uprising. And all Polish monks were thrown out from Hungary. He went to Italy and from Italy he went to the United States. He cannot return to Poland.

If he returned to Poland after that he [would have been] put to death [or taken] to police prison. That is why, you know, he came to the United States, to spread the devotion of Our Lady of Czestochowa, and he found[ed] this place.

*Id.*

When asked why people visit the Shrine, Father Wieliczko testified:

They come ... [e]specially for holy masses, because we have every day a few masses; sometimes in different languages.

But also they come for confession. And also they come for some type of spiritual guidance, because our fathers, they not [only] serve you at the altar during the holy mass, but also they serve a lot, you know, during the confession time. And also they serve ... because some people [do not] come just for confession, but also for some kind of spiritual guidance. ...

*Id.* at 13; R.R. 13a.

As indicated by Father Wieliczko's testimony, the Shrine primarily functions as a Roman Catholic monastery and church; most visitors to the Shrine come for religious services, celebrations, confession and spiritual guidance. Thus, Appellant's property is most appropriately classified for purposes of its eligibility for tax-exempt status as a place of regularly scheduled religious worship. *St. Aloysius.*

In view of the foregoing, we conclude that Appellant's property is not entitled to a tax exemption as an institution of purely public charity inasmuch as it is primarily a

place of regularly stated religious worship and, therefore, its tax exempt status must be determined pursuant to Pa. Const. Art. VIII, § 2(a) and Section 204(a)(1) of the Assessment Law, 72 P.S. § 5020–204(a)(1); *St. Aloysius.*[13]

For the foregoing reasons, we affirm the order of the trial court.

## ***ORDER***

AND NOW, this 22nd day of April, 2005, the July 21, 2004 order of the Court of Common Pleas of Bucks County is hereby AFFIRMED.

CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully concur and dissent. I disagree only with the majority's holding that the Order of St. Paul the First Hermit (Appellant) failed to establish that the forty overnight rooms in the Retreat House at The National Shrine of Our Lady of Czestochowa (Shrine) are exempt from taxation under section 204(a)(1) of The General County Assessment Law (Assessment Law).[1]

Section 204(a)(1) of the Assessment Law provides that all "churches, meetinghouses, or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same" are exempt from taxation. 72 P.S. § 5020–204(a)(1).

## I. Benedictine Sisters

In *Benedictine Sisters v. Fayette County Board of Assessment Appeals,* 844 A.2d

---

13. Having determined that in accord with *St. Aloysius,* the Shrine, which primarily functions as a place of regularly stated religious worship, is not entitled to a tax exemption as an institution of purely public charity, we need not address Appellant's contention that the trial court erred or abused its discretion

in determining that the Shrine does not qualify as an institution of purely public charity under the *HUP* test.

1. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–204(a)(1).

86, 89 (Pa.Cmwlth.2004) (emphasis added), this court held that a Christian retreat center, including three bedrooms, is entitled to tax exemption as an actual place of regularly stated religious worship "where the primary purpose of the [retreat center] is *worship,* and other activities are merely incidental." This court explained that the word "worship" in section 204(a)(1) of the Assessment Law is not limited to a type of formal ceremony involving a church-type building where congregants gather. The word "worship" includes prayer, teaching, adoration, meditation, spiritual readings and discussions. *Id.* (citing *Evangel Baptist Church v. Mifflin County Board of Assessment Appeals,* 815 A.2d 1174 (Pa. Cmwlth.), *appeal denied,* 573 Pa. 712, 827 A.2d 1202 (2003), and *Mount Zion New Life Center v. Board of Assessment and Revision of Taxes and Appeals,* 94 Pa. Cmwlth. 439, 503 A.2d 1065 (1986)).

Here, Appellant presented evidence establishing that the primary purpose of the overnight rooms in the Retreat House is "worship." Testimony shows that the rooms are furnished with very simple beds, a very simple desk, crosses on the walls and no television. (R.R. at 31a.) "[W]hen the people come . . . for retreats, they just come . . . to be . . . alone with God." (R.R. at 31a.) It is *not* the same as taking a rest; the people "want to come and meditate and . . . spend time with God." (R.R. at 47a.) In addition to the testimony, the brochure for the Retreat House states that it "is not a hotel or motel in which one just spends a night, but a place where one comes to experience peace in their search for God." (R.R. at 76a.) "There are no TVs, radios, VCRs, DVD players or CD players. Our lack of these items and other amenities may seem to the outside world as a deficit, but none

of these will be needed for your stay with us." (R.R. at 76a.)

In other words, the forty overnight rooms, by design, serve as an environment for "worship," i.e., prayer and meditation. They are, in essence, personal chapels for the pilgrims and others who come to the Shrine for retreats. The fact that people sleep in the rooms is merely incidental to their primary purpose as an extension of the many and varied spaces available for "worship" at the Shrine. Thus, applying *Benedictine Sisters,* I would conclude that the forty overnight rooms in the Retreat House are exempt from taxation under section 204(a)(1) of the Assessment Law.

## II. Wesley United Methodist Church

In *Wesley United Methodist Church v. Dauphin County Board of Assessment Appeals,* 844 A.2d 57 (Pa.Cmwlth.), *appeal granted,* 578 Pa. 718, 854 A.2d 969 (2004), this court held that a parking lot was entitled to tax exemption because it was "necessary for the occupancy and enjoyment" of the place of worship. In so holding, this court stated that section 204(a)(1) of the Assessment Law provides for consideration of what is reasonably necessary to permit actual worship in a particular place. *Id.*

Here, pilgrims travel great distances from countries all over the world, as well as from the United States, to worship at the Shrine.[2] The record shows that pilgrims have come from Poland, Haiti, Hungary, Italy and Spain. (R.R. at 11a.) Moreover, to accommodate the diverse pilgrim groups, the Shrine offers masses in different languages led by priests of various nationalities. (R.R. at 12a–14a.) I submit that, to permit actual worship at the Shrine *by pilgrims,* it is reasonably

---

**2.** A "pilgrim" is "one who travels to visit a shrine or holy place as a devotee." Webster's Third New International Dictionary 1715 (1993).

necessary for the Shrine to provide overnight accommodations for pilgrims. For that reason also, I would conclude that, under *Wesley United Methodist Church,* the forty overnight rooms in the Retreat House are tax exempt under section 204(a)(1) of the Assessment Law.

Accordingly, I would reverse the trial court's order to the extent it denies tax exemption to the forty overnight rooms in the Retreat House.